Filed 5/21/15  Higgs v. United Prof. Real Estate Inspectors CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| ROY HIGGS, | C074571 |
| Plaintiff and Respondent, | (Super. Ct. No. SCV0028391) |
| v. | |
| UNITED PROFESSIONAL REAL ESTATE INSPECTORS, INC., et al., | |
| Defendants and Appellants. | |

Defendants United Professional Real Estate Inspectors, Inc., Mold Detectives, Inc., and Husbands for Rent, Inc., (collectively, UPRI) appeal from a default judgment entered by the trial court (Curry, J.) in favor of plaintiff Roy A. Higgs.  The trial court (Jones, J.) imposed terminating sanctions after accepting the recommendations of the discovery referee (Sims, J, Ret.) who had found UPRI intentionally destroyed or withheld discoverable documents that UPRI's counsel repeatedly represented would be disclosed.

1

Higgs has moved to dismiss the appeal and obtain monetary sanctions. Given the failure of either side to provide a coherent account of the proceedings relevant to this appeal, we will simply resolve the issues properly tendered on appeal. We affirm.

## PROCEDURAL BACKGROUND

The operative pleading is a verified second amended complaint filed in October, 2011. It is a shareholder's derivative action against UPRI and defendants Russell and Marci Colliau--not parties to this appeal--on behalf of Inspection Management Systems, Inc. (IMS), a close corporation and named defendant. Higgs alleged he was a minority (39%) shareholder, and Russell Colliau was the majority (61%) shareholder. The entities collectively referred to herein as UPRI, and referred to in the complaint as the corporate defendants, are owned by Russell Colliau, who, with his wife Marci Colliau, comprised the officers of those entities.

Higgs alleged that in 2005 he and Russell Colliau formed IMS to market software for home inspectors that Higgs had developed. Higgs alleged Russell Colliau, as president and sole director of IMS, diverted IMS assets to UPRI, entered into self-dealing contracts, made disproportionate corporate distributions favoring himself, and allowed one UPRI entity to use IMS services without compensation. IMS funds were also used to pay personal expenses of Russell and Marci Colliau, and to pay for services that benefitted UPRI. Other defalcations and fiduciary breaches were alleged, but are not important to detail.

Various discovery and other motions were filed, culminating in a January 11, 2012, order denying leave to file a third amended complaint. The following week, a demurrer was overruled and a summary judgment motion was denied. The next week, Higgs's motion to continue a trial date was itself continued, because the trial court (Wachob, J.) wanted to await the findings of the discovery referee, to whom several motions by both sides had been referred.

On July 27, 2012, in set four of the findings and recommendations of the referee, Justice Sims recommended terminating sanctions in favor of Higgs.

In his ruling, Justice Sims summarized the proceedings, noting that in set *one* of his findings, on February 10, 2012, he had found that on March 20, 2011, Higgs served requests for production of documents on UPRI seeking 11 categories of documents, and UPRI failed to comply with the request. Counsel exchanged a series of meet and confer letters in which UPRI's counsel represented that documents existed and would be produced, at one point referencing a total of 25 boxes and at another point referencing 10 boxes. On October 24, 2011, the trial court (Nichols, J.) granted Higgs's motion to compel and the date of production, as clarified by Judge Wachob, was November 14, 2011. In response, UPRI produced three insurance policies and a device containing QuickBooks files, and asserted no other paper documents existed. Justice Sims noted the discrepancy between UPRI's counsel's representation that boxes of documents existed, and the paltry response to the order compelling production. However, Justice Sims concluded expert testimony was necessary to interpret the QuickBooks files, before he found UPRI violated the discovery order, so he denied the motion without prejudice to renewal. Higgs then presented a declaration from a CPA, who examined the QuickBooks files and concluded they did not respond to the discovery request, and Higgs renewed the motion for terminating sanctions. Justice Sims overruled UPRI's objections to the procedure and to the expert declaration, and rejected UPRI's contention that Higgs's failure to attend the second day of a scheduled deposition barred him from moving for sanctions.

Justice Sims then found UPRI "intentionally and in bad faith refused to produce documents" and "the only effective sanction is entry of a default judgment." He based the bad faith finding on four facts: (1) UPRI's counsel's letters referred to boxes of documents and even detailed that some documents were stapled together, which showed that at some point paper records existed; (2) UPRI's claim that *no* paper records were

3

kept was not credible "when, in fact, a closely related corporation [IMS], produced 19 boxes of paper documents in this action"; (3) the CPA's declaration was credible, and explained the QuickBooks files did not contain any responsive documents; (4) although UPRI's expert, an accountant, declared that the QuickBooks files had had "hundreds of invoices," and that Higgs, during the earlier hearing, had only shown fewer than 20 existed, at the hearing, Russell Colliau went through the QuickBooks files "at length . . . and explained the entries to" Justice Sims, and if they had been altered as suggested by the defense expert, "these omissions would have been noted by Mr. Colliau; they were not.  I find that [Higgs] did not alter the QuickBooks disc supplied to him by defendant Colliau.  If the disc was altered, as declared by [UPRI's accountant] it was altered while in the possession of a defendant."

As for the remedy, "the only effective sanction as to these corporate defendants is entry of a default judgment.  The documents that defendants refused to produce were crucial to proving both liability and damages."

Justice Sims declined to impose alter ego liability on Russell Colliau, but sanctioned him $5,000 for perpetrating discovery abuse, and also sanctioned Higgs's attorney $3,520 for pursuing sanctions against Marci Colliau without cause.

On May 13, 2013, Judge Jones largely overruled objections to the referee's recommendation.  Judge Jones found substantial evidence supported the referee's factual findings, and in particular upheld the conclusion that Higgs's expert CPA was qualified to give an opinion about the content of the QuickBooks files, and that UPRI had presented a contrary expert opinion, which was rejected by the referee.  Further, Judge Jones upheld the referee's recommendation that lesser sanctions would not be effective in this particular case, and rejected UPRI's contention that because it subsequently purported to subpoena paper records from third parties, terminating sanctions were excessive.  Judge Jones also rejected the contention that *Higgs's* purported discovery violations precluded the recommended remedy, and rejected the contention that Higgs's

4

CPA did not disclose facts purportedly showing bias. Accordingly, Judge Jones struck the answer to the second amended complaint and entered a default judgment against UPRI, subject to a prove-up hearing as to the amount of damages.

The prove-up hearing was conducted by Judge Curry, who issued the final default judgment. UPRI timely appealed from that judgment.[1]

The appeal lies. (See Code Civ. Proc., § 904.1, subd. (a)(1); *Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 161.)

## DISCUSSION

### I

### *Filing the Motion for Sanctions*

UPRI first contends the motion for sanctions was defective because it was not filed with the clerk of the court, but with the discovery referee. (Cf. *Conservatorship of Townsend* (2014) 231 Cal.App.4th 691 [filing motion for new trial directly with temporary judge did not extend the time for filing a notice of appeal, because it was not filed *with the court*].)

We granted a motion to augment the record to include a file-stamped copy of the motion filed with the Placer County Superior Court clerk on June 22, 2012, with a hearing date before the discovery referee at his private office. Thus the document has now been found and made part of the record on appeal. It shows that the factual predicate of UPRI's claim, that the document was never filed with the superior court, is incorrect.

---

[1] In the meantime, UPRI moved for reconsideration on the basis of new evidence--the fact that it had produced paper documents *after* Judge Jones confirmed the referee's findings of discovery abuse, purportedly obtained via third-party subpoenas. Higgs sought proof that third-party subpoenas had been served, but claimed he did not receive proof. That disagreement continues on appeal. This is but one of the many distracting issues we find unnecessary to explore further.

5

II

*Whether Terminating Sanctions were Appropriate*

In several sub-arguments, UPRI contends terminating sanctions were unwarranted because there was no showing that lesser sanctions would not be effective, UPRI did not willfully refuse to comply with discovery, there was no pattern of noncompliance, Higgs received the discovery requested, and the termination order was based on "biased, conflicting and un-cross examined expert testimony."

"The power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action. [Citations.] Only two facts are absolutely prerequisite to imposition of the sanction: (1) there must be a failure to comply . . . ; and (2) the failure must be wilful [citation]. Here, the trial court found the essential fact of wilfulness, and such finding is entitled to deference on appeal." (*Calvert Fire Ins. Co. v. Cropper* (1983) 141 Cal.App.3d 901, 904; see *Kayne v. The Grand Holdings Limited* (2011) 198 Cal.App.4th 1470, 1474.)

A party who fails to state the facts faithfully, in light of the applicable standard of review on appeal, forfeits evidentiary claims. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) UPRI states the facts in its favor, thereby forfeiting evidentiary claims. It also states facts that developed later (such as purported subsequent discovery of paper documents, described *ante*), but we must review the trial court's ruling as of the time it was made. (See, e.g., *People v. Welch* (1999) 20 Cal.4th 701, 739; *People v. Cervantes* (2004) 118 Cal.App.4th 162, 176.)

However, we will briefly address each of UPRI's sub-arguments.

1. "The discovery statutes evince an incremental approach to discovery sanctions, starting with monetary sanctions and ending with the ultimate sanction of termination." (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992.) However, this does not mean that terminating sanctions must be preceded by lesser sanctions. Generally, a claim that lesser sanctions should be imposed is forfeited if not made in the trial court.

(*Hartbrodt v. Burke* (1996) 42 Cal.App.4th 168, 173-174.) Here, UPRI's only alternative suggestion in its opposition to the discovery referee's proposed sanctions was that the trial court compel "[UPRI] to obtain the documents not in their possession." This is another iteration of the claim that third-parties purportedly had copies of the documents, and ignores the finding that UPRI *also had* possession of those documents, but destroyed or withheld them.

Justice Sims carefully detailed the course of conduct by UPRI's counsel, who repeatedly assured all concerned that boxes of documents, some with *stapled* documents, were being compiled, but then produced virtually nothing, from which it rationally could be inferred those documents existed at one time and were destroyed or withheld to stymie discovery. That spoliation or secretion of evidence merited sanctions. (*R.S. Creative, Inc. v. Creative Cotton, Ltd.* (1999) 75 Cal.App.4th 486, 495-496 [spoliation].)

> "Spoliation of evidence means the destruction or significant alteration of evidence or the failure to preserve evidence for another's use in pending or future litigation. [Citations.] Such conduct is condemned because it 'can destroy fairness and justice, for it increases the risk of an erroneous decision on the merits of the underlying cause of action. Destroying evidence can also increase the costs of litigation as parties attempt to reconstruct the destroyed evidence or to develop other evidence, which may be less accessible, less persuasive, or both.' [Citation.] While there is no tort cause of action for the intentional destruction of evidence after litigation has commenced, it is a misuse of the discovery process that is subject to a broad range of punishment, including monetary, issue, evidentiary, and terminating sanctions. [Citations.] A terminating sanction is appropriate in the first instance without a violation of prior court orders in egregious cases of intentional spoliation of evidence." (*Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1223 (*Williams*); see *Collisson & Kaplan v. Hartunian* (1994) 21 Cal.App.4th 1611, 1618 ["Defendants chose to ignore the many attempts, both formal and informal, made by plaintiff to secure fair responses from them"].)

In the face of such egregious destruction or secretion of discoverable material after a motion to compel, the discovery referee's findings, adopted on this point by the trial court, support imposition of terminating sanctions, within the trial court's discretion.

2.  UPRI contends no bad faith abuse of discovery was shown, merely an inability to comply with discovery.  This contention flatly ignores Justice Sims's findings that discovery material existed, was referenced by UPRI's counsel, but then was destroyed, or at least withheld, findings adopted by Judge Jones.  That shows more than an *inability* to comply, but an intentional decision not to comply.

In part, UPRI asserts the disclosure of the QuickBooks files satisfied its duties, and asserts its counsel's prior estimates of the number of boxes to be produced was based on the assumption that the electronic files would be printed out.  This, too, ignores Justices Sims's findings, adopted by Judge Jones, to the effect that those files were inadequate, as well as the reference in UPRI's counsel's letter to *stapled* documents:  If, as now asserted on appeal, disclosure was intended to be based on printing out electronic files, why was there a reference in the letter to *stapled* documents?  The sanctions finding was based on review of all the moving and opposing papers, as well as evidence by competing expert witnesses.  UPRI simply points to evidence favorable to its position, and ignores or denigrates the contrary evidence that was credited by Justice Sims, and adopted by Judge Jones.  UPRI's contention defies the appropriate standard of review, which requires us to "resolve all evidentiary conflicts most favorably to the trial court's ruling." (*Williams*, *supra*, 167 Cal.App.4th at p. 1224.)[2]

---

[2] Later in its brief UPRI contends Higgs's expert was biased and gave "conflicting and un-cross examined" testimony.  This claim, too, is based on UPRI's version of the facts. It appears Higgs's counsel represented the expert's partner in another matter.  That is hardly the type of bias that would undermine the discovery referee's or trial court's findings, and UPRI's late discovery of such claim of bias is of no moment.  Judge Jones considered and rejected the claim and UPRI does not attempt to show that that ruling reflects an abuse of discretion.  Nor does UPRI explain where it sought to cross-examine the expert.  Judge Jones ruled it was permissible for Justice Sims to make recommendations based on competing expert declarations, rather than compelling live testimony.  That is the normal way to resolve discovery disputes.  (See, e.g., *Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 391-392.)  UPRI's authority

3. UPRI contends there was no pattern of noncompliance, and points out Higgs, too, was found noncompliant in some respects. This reiterates the claim that lesser sanctions should have been imposed, and fails for the same reason: Given the egregious nature of the abuse, the discovery referee and trial court could properly conclude terminating sanctions were warranted. And the fact Higgs was found in breach of some of *his* duties was not found by Judge Jones to excuse UPRI's conduct. References to purported postjudgment conduct by Higgs are irrelevant to this question, as well as absent from the record before the trial court when the sanctions order was made.[3]

4. UPRI contends Higgs ultimately received all the documents requested, therefore no harm, no foul. This is based on the contention that third parties purportedly possessed all the relevant documents, and they have now been obtained and disclosed to Higgs. However, as stated *ante*, "We normally review a trial court's ruling based on the facts known to the trial court at the time of the ruling." (*People v. Cervantes*, *supra*, 118 Cal.App.4th at p. 176; see *People v. Welch*, *supra*, 20 Cal.4th at p. 739.) Discovery abuse cannot be cured by handing over the required material long after a motion for discovery sanctions has been litigated. That would undermine what we have previously described as "a principal feature of the discovery act [which] is that most discovery requests are self-executing [citations], and do not consume court time." (*Zellerino v. Brown* (1991) 235 Cal.App.3d 1097, 1111.)

After Judge Wachob appointed a discovery referee, and after that referee made four sets of findings and detailed egregious discovery abuse, reviewed and largely affirmed by Judge Jones, UPRI believes everything it did is excusable because it *later* handed over the documents, albeit purportedly not the ones it had destroyed or withheld,

---

regarding the right to cross-examination involves experts *who testify at trial*, not experts who prepare declarations. (See, e.g., *People v. Milner* (1988) 45 Cal.3d 227, 241.)

[3] This seems to presage UPRI's "disentitlement" claim, addressed in Part III, *post*.

but purportedly copies from third parties. UPRI cites no authority to support this proposition. Contrary to UPRI's view, Higgs was not placed in a "better position" than if UPRI had not destroyed the original documents it possessed or delayed their lawful disclosure. (Cf. *Williams*, *supra*, 167 Cal.App.4th at p. 1223.)

III

*Disentitlement Doctrine*

UPRI contends the trial court could not grant Higgs affirmative relief because Higgs was in contempt of trial court orders. UPRI cites cases involving the appellate disentitlement doctrine. That doctrine--when it applies--applies to a party seeking relief from the appellate court. As we summarized in a prior case, " 'It is well established that an appellate court may stay or dismiss an appeal by a party who stands in contempt of the legal orders and processes of the superior court.' . . . 'The rationale upon which [appellate] relief is denied is that it would be a flagrant abuse of the principles of equity and of the due administration of justice to consider the demands of a party who becomes a voluntary actor before a court and seeks its aid while he stands in contempt of its legal orders and processes.' " (*Stone v. Bach* (1978) 80 Cal.App.3d 442, 444; see *Gwartz v. Weilert* (2014) 231 Cal.App.4th 750, 757-758.)

Higgs is not seeking the aid of this court, but defends the trial court's judgment. Therefore, no legal basis for *appellate* disentitlement can be shown: If we were to apply the disentitlement doctrine, we would *dismiss the appeal*, leaving the judgment intact.

IV

*Denial of Protective Order*

UPRI claims the trial court should not have granted Higgs's motion to compel while denying UPRI's motion for a protective order. UPRI claims, "The key documents in dispute" "are confidential and proprietary and contain information protected by the California Constitution's privacy guarantees." UPRI also contends disclosing the

10

information may violate the privacy rights of UPRI employees and claims certain financial information was protected by statute.

Nowhere in its briefing does UPRI identify where it made these objections in the trial court. UPRI sought its protective order on July 12, 2011. It now asserts, "The trial court granted the motion to compel without performing the required [privacy balancing] analysis and in contravention of the constitutional rights implicated." No record citation is supplied for this latter statement. However, Higgs, in *his* briefing, explains that Judge Nichols noted in her October 24, 2011, order granting the motion to compel that UPRI "agreed to produce the requested document in their responses but then failed to do so," and points out there followed the meet and confer letters between counsel in which UPRI's counsel described the boxes of documents that would be disclosed. Finally, Higgs states Judge Nichols had dismissed the confidentiality claims "because all three appellants are corporations" which lack a fundamental right of privacy under the California Constitution.[4] The record citations supplied by Higgs support these facts, and as Higgs emphasizes, UPRI does not discuss them in its opening brief, which therefore provides a misleading account of what transpired in the trial court. Further, we do not find these claims in UPRI's objections to the referee's recommendations, which summarized excerpts of the correspondence by UPRI's counsel committing to produce the documents, and therefore Judge Jones was not asked to rule on these objections. We decline to address them for the first time on appeal.

V

*Due Process, Equal Protection, and Right to a Jury Trial*

UPRI contends the judgment resulted from a denial of equal protection, a lack of an opportunity to be heard, and the denial of a jury trial.

---

[4] This view is correct. (See *Roberts v. Gulf Oil Corp.* (1983) 147 Cal.App.3d 770, 795.)

11

Largely, this is an argument against the imposition of terminating sanctions in *any* case, because such sanctions obviate the need for a jury trial, and preclude a party from being heard, whereas parties in other cases, who have not been subjected to such sanctions, are allowed to be heard by a jury. But, as we have said in another context, "The essence of an equal protection claim is that two groups, *similarly situated with respect to the law in question*, are treated differently." (*Grossmont Union High School Dist. v. State Dept. of Education* (2008) 169 Cal.App.4th 869, 892, italics added.) A party who has not been sanctioned is not similarly situated to a party who has, therefore no equal protection claim is made when the two parties are treated differently, such as when one party gets to be heard at a jury trial and one does not.

In part, UPRI complains that the default prove-up hearing was not conducted by Judge Jones, and in UPRI's view, had Judge Jones heard the matter, *Higgs's* purported delicts might have led Judge Jones *not* to issue a default judgment. Further, UPRI claims it had no notice of the hearing. Judge Jones adopted the discovery referee's findings, struck UPRI's answer, and entered a default. Judge Curry conducted the ensuing prove-up hearing. UPRI does not provide any record citations to show that it objected to Judge Curry conducting the prove-up hearing, or to inadequate notice of the hearing, or to any motion to set aside the ensuing judgment on these grounds. Therefore, the points now raised are forfeited. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

VI

*Miscellaneous Orders*

In separate headings, UPRI challenges four trial court rulings, specifically, (1) a ruling continuing trial, (2) a ruling granting leave to amend, (3) an order overruling a demurrer, and (4) an order denying summary judgment.

UPRI does not explain how any of these challenged orders are embraced by the notice of appeal, which specifies that the appeal was taken from the default judgment entered by Judge Curry. An appeal from a default judgment is limited, because the effect

12

of the lack of an answer (here, stricken as a discovery sanction) means UPRI admits the facts in the second amended complaint. "The judgment which follows upon this sort of admission is . . . a complete adjudication of all the rights of the parties embraced in the prayer for relief and arising from the facts stated in the complaint . . . . The defendant here is presumed to have . . . consented that plaintiff should obtain the relief therein prayed for, upon the conditions and facts set forth in the complaint." (*Brown v. Brown* (1915) 170 Cal. 1, 5; see *Stephen M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 824 [review of default judgment "limited to questions of jurisdiction, sufficiency of the pleadings and excessive damages"].) Thus, review of prior procedural orders is not authorized in this appeal from a default judgment.

Further, UPRI has not explained how any error in any of the challenged procedural orders caused a miscarriage of justice (Cal. Const., art. VI, § 13; see Code Civ. Proc., § 475), assuming the default judgment itself was properly based on a discovery sanctions order striking the answer, which we have concluded is the case. (See *Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833-836 [although order denying summary judgment was *reviewable* on appeal after trial, appellant had to show how denial of that motion resulted in prejudice, given the jury's adverse resolution of factual questions].) Absent an explicit argument that a procedural mistake caused prejudice, we are under no obligation to address the claim. (See *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105-106.) For example, UPRI contends that had the continuance not been granted, it would have been too late for Higgs to move for sanctions. That shows a *causal relationship*, but not a *miscarriage of justice*. (See *Waller*, at p. 833.)

13

Because UPRI does not explain how any of the purported procedural errors unrelated to the discovery order caused a miscarriage of justice, the claims are forfeited, even if they were deemed to be cognizable in this appeal from a default judgment.[5]

**DISPOSITION**

The judgment is affirmed. UPRI shall pay Higgs's appellate costs. (See Cal. Rules of Court, rule 8.278(a)(2).)

                                                    _____DUARTE_____, J.

We concur:

_____NICHOLSON_____, Acting P. J.

_____MAURO_____, J.

---

[5] All pending motions are denied, except Higgs's second motion to augment is granted as to item 2, consisting of UPRI's objections to the discovery referee's recommendations.

UPRI's claim in the reply brief that the trial court was biased comes too late (*Kahn v. Wilson* (1898) 120 Cal. 643, 644) and is bereft of persuasive facts or argument (see *In re S.C.*, *supra*, 138 Cal.App.4th at p. 421). This continues the tone used by both parties: "[W]hile counsel in their briefs have displayed much industry and learning, they are justly subject to censure for their apparent forgetfulness of the dignity and courtesy that should ever prevail in contests like this. It must be manifest that their untoward vituperation affords no credit to themselves and likewise neither entertainment nor enlightenment to the court." (*Delger v. Jacobs* (1912) 19 Cal.App. 197, 208.)