[No. B194598. Second Dist., Div. Eight. Oct. 27, 2008.]

DOUG WILLIAMS, Plaintiff and Appellant, v.
LARRY RUSS et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Martin Stanley, Martin Stanley; Esner, Chang & Ellis and Stuart B. Esner for Plaintiff and Appellant.

Morris Polich & Purdy and Charles E. Slyngstad for Defendants and Respondents.

**OPINION**

RUBIN, J.—Plaintiff Doug Williams appeals from the judgment entered after his legal malpractice complaint against Larry Russ and Russ's law firm was dismissed as a discovery sanction because Williams allowed the destruction of most of his client files after obtaining them from Russ. We affirm.

## FACTS AND PROCEDURAL HISTORY

Doug Williams was the administrator and trustee of an employee benefits and retirement plan known as EPA. Williams and EPA initiated what evolved into a series of lawsuits and cross-complaints in federal court (the EPA actions) that were eventually settled but which led to Williams's removal as the head of EPA in 1997. In 1998, Williams sued his former lawyer, Bruce Ashton, for legal malpractice, contending that Ashton's poor advice led to his removal as EPA's trustee. Ashton was later granted summary judgment because the statute of limitations had run on Williams's causes of action. In May 2000, Williams sued Larry Russ and the law firm of Russ, August & Kabat for legal malpractice based solely on their representation of Williams in connection with the EPA and Ashton malpractice actions.[1]

In February 2001, Williams demanded that Russ turn over the entire Williams client file. That demand was not made through any formal discovery process, however. Instead, the documents were requested pursuant to the state bar rule requiring lawyers to turn over client files upon demand. (Rules Prof. Conduct, rule 3-700(D).) In March 2001, Russ turned over to Williams's lawyer 36 file boxes that Russ said contained the entire file from his representation of Williams. Before doing so, Russ's lawyer, Charles E. Slyngstad, copied any correspondence between Russ and Williams, but did not copy any other portions of the file. Williams put the 36 file boxes in a storage space he rented for just that purpose.

Williams's lawyer, Martin Stanley, reviewed the contents of the file and copied about 11 boxes worth of material that he deemed relevant to the action. In April 2001, he wrote Slyngstad and reported that based on his review, he would amend the complaint to include a breach of fiduciary duty claim because Russ had allegedly concealed from Williams that the EPA settlement included a release of Russ from malpractice liability as to Williams. In June 2001, Williams filed a first amended complaint that added such a cause of action.

---

[1] Except as otherwise noted, when we refer to Russ, we include the law firm, which is now known as Russ, August, Kabat & Kent.

Between March and December 2001, Williams fell behind on his rental payments to the storage facility where he kept his client file. The facility's operators repeatedly notified Williams that his default could lead to the sale of the items he was storing. Williams made partial payments and promised to bring his account current, but never did so. On December 21, 2001, the boxes containing his client file were destroyed when no one made a bid to purchase them. Williams did not tell Russ the files had been destroyed.

In April 2002, Russ was granted summary judgment. We reversed that judgment in April 2004, and remanded the case to the trial court because triable issues of fact existed concerning whether Russ caused Williams's removal as EPA trustee and whether Williams suffered emotional distress damages from Russ's alleged breach of fiduciary duty. (*Williams v. Russ* (Apr. 21, 2004, B160819) [nonpub. opn.].)

In October 2004, Williams filed a second amended complaint that expanded the malpractice cause of action to include faulty transactional advice in connection with the operation of EPA, including various "fiduciary matters," compliance with federal laws governing retirement plans, "insurance issues," and "transactional and litigation matters." The breach of fiduciary duty claim was also expanded to include an allegation that Russ, in conflict with Williams's best interests, had also signed an agreement tolling the limitations period for potential malpractice claims against him. In December 2004, Russ made a discovery request that included the 36 boxes of documents he turned over to Williams in March 2001. Williams objected that he had no obligation to produce the documents because they had once been in Russ's possession. On January 19, 2005, Stanley told Slyngstad that except for the 11 boxes of documents he had copied, the client file had been destroyed.

Russ moved to dismiss the action as a discovery sanction for Williams's conduct in allowing a large portion of the client file to be destroyed, thereby precluding Russ from reconstructing the file and obtaining documents relevant to his defense. The motion was supported by a declaration from Russ that his entire client file, which included correspondence, notes, research, pleadings, and other materials, had been turned over to Williams in March 2001. Slyngstad submitted a declaration stating that the 36 boxes turned over to Williams at his rented storage facility constituted Russ's entire client file. Before delivering the documents, Slyngstad said he reviewed them and saw that they contained all of Russ's correspondence, notes, pleadings, and other

materials relating to Russ's representation of Williams from the early 1990's until Russ's representation ended. According to Slyngstad, he copied only the correspondence that had been sent to or received by Russ and assumed Williams would preserve the boxes as evidence.

Slyngstad's declaration pointed out that the first and second amended complaints were filed after the client files were produced, with the second amended complaint coming after they were destroyed. Documents relevant to the new allegations and claims of those two amended pleadings had been in the client files when they were turned over to Williams, Slyngstad said. According to him, these included: documents relating to EPA's receipt of certain controversial insurance commissions, along with the legal advice Williams and EPA received on those commissions from lawyers who preceded Russ; documents relating to formal and informal complaints by employers and individual participants in EPA's retirement plans; all the communications with the special master in the EPA actions; documents relating to those actions; documents that were covered by the attorney-client privilege or that constituted attorney work product; and documents relating to the disputed tolling agreement alleged in the second amended complaint. If the original stipulation of settlement that Williams complained of had ever existed, Slyngstad said it too would have been in one of the 36 boxes. According to Slyngstad, it was no longer possible to determine what was kept or what had been destroyed.

Finally, Slyngstad's declaration recounted Williams's evasive responses to various discovery requests that either directly or by necessary implication covered all or part of the contents of the client file, culminating in Stanley's reluctant admission in January 2005 that the file had been destroyed, except for the portion that Stanley retained.

The motion also included the deposition testimony of the managers of the storage facility where Williams kept the documents, along with records from that facility documenting Williams's history of late and partial payments and the numerous written and telephonic notices that warned him the contents of his storage facility would be sold if he did not pay his past due rent.

In opposition to the motion, Williams submitted a declaration stating that he missed a few rental payments to the storage facility because he was in financial trouble and because he was recovering from back surgery in the months before the files were destroyed. According to Williams, a tall, thin paralegal working for Russ told him that Russ had copied the file and he

therefore believed Russ had a copy of the entire file. No one at the storage facility told him the documents might be destroyed. Had he known, he would have immediately paid his past due bill. He also declared that he had previously seen his entire file at Russ's office and that the 36 boxes Russ delivered to him did not appear the same as what he had seen before. Williams's lawyer, Stanley, declared that the person who replaced Williams as EPA administrator secured 51 boxes of EPA plan files from Russ, as per court orders in the EPA actions. Stanley said that the 36 boxes Russ delivered to Williams were mostly pleadings and that he pulled out any documents relevant to this action.

Based on this, Williams argued that he had at most been negligent in letting the files be destroyed and that Russ was equally at fault for not having copied the files. He also argued that Russ bore the burden of showing prejudice from the lost files, that comparable evidence could be found elsewhere, and that, at most, lesser sanctions than dismissal were warranted, particularly jury instructions that an adverse inference to Williams could be drawn from the loss of the files.[2] In his reply, Russ had a declaration from Slyngstad stating that the documents turned over to the new EPA administrator were mostly EPA's operational business documents.

Because the trial court could not determine what files had been destroyed or their effect on the first and second amended complaints, and because the issues were complex and time consuming, the court appointed a retired judge as discovery referee to resolve those issues. The referee found that Williams had been negligent in allowing the files to be lost and recommended that the jury be instructed that it could, if it wished, draw an inference adverse to Williams about the contents of the missing files.

Russ objected to the referee's report on three grounds: (1) the jury instruction permitting an adverse inference was an insufficient remedy and the referee's recommendation was based on insufficient evidence because he did not review the remaining portions of the file retained by Williams; (2) the referee's finding that Russ was provided other documentary evidence before the files were destroyed was not supported by the evidence; and (3) the finding of negligent spoliation by Williams was wrong because the evidence showed it was intentional.

After permitting supplemental briefing by the parties, followed by lengthy oral argument, the trial court sustained all of Russ's objections to the referee's findings and recommendations. The court did not blame the referee,

---

[2] We have omitted from our description of Williams's opposition arguments or issues not raised on appeal.

whom it held in "high esteem," but believed the trial court's underlying reference order had not been sufficiently specific. Because the trial court was far more familiar with the case, including its review of "voluminous documents," the trial court found that it was more knowledgeable than the referee and was therefore in a better position to resolve the issue.

In a detailed minute order, the court made several findings that led it to conclude that a terminating sanction was proper: (1) Williams was knowledgeable about litigation, particularly about the facts of this case, was very involved in and integral to this litigation, and had inventoried the contents of his client file more than once; (2) he demanded the file under the Rules of Professional Conduct and was on notice that nonpayment of his storage rental fee would result in destruction of the file; and (3) after filing this action and demanding the file, he caused it to be destroyed by allowing the destruction to happen, then concealed the fact for two years. Based on that, the court found that the destruction of the files was intentional and inferred that this was done to destroy evidence potentially favorable to Russ.

The court found this spoliation was highly prejudicial to Russ's defense of the case. "It is stunning to this Court that [Williams] would file a malpractice case, use the professional rules and demand his entire client file and then have it destroyed. It is not enough that [Williams's] counsel took what he thought was important and that [Russ] copied some of the client file. The client file is a collection of documents. Destruction of part of it destroys the integrity of the entire file. How do we know what was destroyed? How do you prove a negative? Could there be a note or something written on something in the file that would be exculpatory? We will never know its true value due to the conduct of [Williams]." Although aware that sanctions should ordinarily be progressive and that lesser sanctions should be considered before dismissal, the court found dismissal was warranted. This was based on the findings made above, and findings that Williams had a duty to maintain the client file and had the burden of proving no prejudice occurred, and that intentional spoliation raised an inference of extreme prejudice. Based on the unique facts of this case, and after weighing Williams's culpability against the harm to Russ, the court concluded dismissal was the appropriate sanction because lesser sanctions would not cure the harm done. The court then ordered the case dismissed.

On appeal, Williams contends the court erred because: (1) he was merely negligent, he believed Russ had copied the files, Russ copied more than just the correspondence, and there was no evidence that significant portions of the file could not be retrieved from Russ's computer files or other sources; and (2) the court erred by placing the burden to disprove prejudice on Williams.

## DISCUSSION

### 1. *Dismissal of the Action Was Not An Abuse of Discretion*

█ Spoliation of evidence means the destruction or significant alteration of evidence or the failure to preserve evidence for another's use in pending or future litigation. (*Willard v. Caterpillar, Inc.* (1995) 40 Cal.App.4th 892, 907 [48 Cal.Rptr.2d 607], overruled on other grounds in *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 18, fn. 4 [74 Cal.Rptr.2d 248, 954 P.2d 511] (*Cedars-Sinai*).) Such conduct is condemned because it "can destroy fairness and justice, for it increases the risk of an erroneous decision on the merits of the underlying cause of action. Destroying evidence can also increase the costs of litigation as parties attempt to reconstruct the destroyed evidence or to develop other evidence, which may be less accessible, less persuasive, or both." (*Cedars-Sinai, supra*, at p. 8.) While there is no tort cause of action for the intentional destruction of evidence after litigation has commenced, it is a misuse of the discovery process that is subject to a broad range of punishment, including monetary, issue, evidentiary, and terminating sanctions. (Code Civ. Proc., §§ 2023.010, subd. (d), 2023.030, subds. (a)–(d); *Cedars-Sinai*, at p. 12.) A terminating sanction is appropriate in the first instance without a violation of prior court orders in egregious cases of intentional spoliation of evidence. (*R.S. Creative, Inc. v. Creative Cotton, Ltd.* (1999) 75 Cal.App.4th 486, 497 [89 Cal.Rptr.2d 353].)

█ Discovery sanctions are intended to remedy discovery abuse, not to punish the offending party. Accordingly, sanctions should be tailored to serve that remedial purpose, should not put the moving party in a better position than he would otherwise have been had he obtained the requested discovery, and should be proportionate to the offending party's misconduct. (*McGinty v. Superior Court* (1994) 26 Cal.App.4th 204, 210–212 [31 Cal.Rptr.2d 292].)

Williams contends the trial court's ruling violated these principles. This contention rests on a four-part evidentiary challenge to the court's finding that he intentionally destroyed the file. According to Williams, the evidence shows he was merely negligent because: (1) he had been told Russ had copied the entire file; (2) Russ copied more of the file than he claimed; (3) significant portions of the file could be found elsewhere; and (4) he did no more than make late payments to the storage facility. As a result, Williams contends lesser sanctions were warranted, such as instructing the jury it could draw an adverse inference from the loss of the file. (See *Cedars-Sinai, supra*, 18 Cal.4th at pp. 11–12.)

In support of his appellate contentions, Williams relies on the facts most favorable to him and the referee's finding that he acted negligently, not intentionally. This is contrary to the applicable standard of review, however. We review the trial court's order under the abuse of discretion standard and resolve all evidentiary conflicts most favorably to the trial court's ruling. We will reverse only if the trial court's order was arbitrary, capricious, or whimsical. It is appellant's burden to affirmatively demonstrate error and where the evidence is in conflict, we will affirm the trial court's findings. (*Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 401 [55 Cal.Rptr.3d 751].) We presume the trial court's order was correct and indulge all presumptions and intendments in its favor on matters as to which it is silent. (*Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1217 [45 Cal.Rptr.3d 265].)

When the conflicting evidence is viewed through this standard, it is more than sufficient to affirm the trial court's findings. Within weeks of obtaining the file from Russ, Williams's lawyer warned Slyngstad that he found evidence in the file to support new claims and soon after amended the complaint accordingly. During the next few months, Williams fell into a pattern of either late or partial payments on the rental space where he chose to store the file. Despite numerous and repeated warnings from the storage facility that the contents of his storage space would be sold, Williams did nothing to prevent their sale and concomitant destruction. We agree with the trial court that this is tantamount to intentionally destroying those files.[3] Then, instead of promptly informing Russ, Williams kept it secret and the truth was not revealed for more than three years until Russ demanded production of the entire file during discovery. This at least raises an inference that, after cherry-picking favorable new information from the file, Williams chose to stand by and allow the rest of the files to be destroyed. We also agree with the trial court that at least one reason for having done so would be to prevent Russ from obtaining other documents from the file that were unfavorable to Williams.

Williams contends he was bedridden from back surgery during that time and was also in financial trouble. Not only was the trial court free to disregard that assertion, it was not supported by the evidence. Although Williams supplied medical records showing he had been diagnosed with degenerative disc disease, there were no records to show that surgery was performed. He also produced no evidence to support his claimed financial difficulties.

---

[3] Williams also contended that the storage facility never told him the documents might be destroyed, just that they might be sold. That is a distinction without a difference.

The evidence is similarly in conflict in regard to Williams's other contentions. Although Williams claimed that a tall, thin paralegal working for Slyngstad told him the entire filed had been copied, Slyngstad denied that any such person worked for him and denied ever telling Williams or Stanley that the entire filed had been copied. Likewise, Slyngstad said in his declaration that he had copied only the correspondence in the file, creating yet another evidentiary conflict. Finally, Williams's assertion that some of the missing documents could be found elsewhere is faulty for two reasons: First, it is based on the existence of documents in the possession of EPA's subsequent administrator that Slyngstad says were not part of Russ's client file and were instead nothing more than the ordinary business records of EPA; and second, it has nothing to do with whether Williams acted intentionally. Accordingly, we reject Williams's contention and affirm the trial court's finding that he acted intentionally.

## 2. *The Trial Court Properly Shifted the Burden of Proof*

■ Except as otherwise required by law, a party has the burden of proof as to the existence or nonexistence of each fact that is essential to his claim for relief. (Evid. Code, § 500.) Williams contends the trial court erred by placing the burden of proof on him to show that Russ was not prejudiced by the loss of the documents.[4] To support this contention, Williams cites two decisions that did not concern Code of Civil Procedure discovery sanctions or the spoliation of evidence: *Mir v. Charter Suburban Hospital* (1994) 27 Cal.App.4th 1471 [33 Cal.Rptr.2d 243] (reversing order awarding attorney fees as sanctions to physician who successfully overturned hospital's disciplinary action against him, noting solely as an aside that upon remand the physician bore the burden of proving the disciplinary action was without merit under the applicable statutory fee provision); and *Corbett v. Hayward Dodge, Inc.* (2004) 119 Cal.App.4th 915 [14 Cal.Rptr.3d 741] (prevailing defendant in Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) action has burden to prove plaintiff acted in bad faith in order to recover statutory attorney fees). In his reply brief, Williams cites *Morgan v. Ransom* (1979) 95 Cal.App.3d 664, 669–670 [157 Cal.Rptr. 212], which held that dismissal of a plaintiff's action based on his failure to answer interrogatories was improper without a showing of resulting prejudice. As with the other two decisions cited by Williams, however, *Morgan* did not concern spoliation of evidence.

---

[4] Although the parties refer to this as the burden of proving prejudice, it is more accurately defined as the burden of proving that a requested discovery sanction is appropriate and proportionate under the standards we discussed above. For ease of reference, however, we will use the parties' nomenclature and refer to this as the burden of showing prejudice.

As Russ points out, however, under Evidence Code section 500 (section 500) the burden of proof may sometimes be shifted to a defendant or other responding party. Such a shift "rests on a policy judgment that there is a substantial probability the defendant has engaged in wrongdoing and the defendant's wrongdoing makes it practically impossible for the plaintiff to prove the wrongdoing." (*National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.* (2003) 107 Cal.App.4th 1336, 1346 [133 Cal.Rptr.2d 207].) This reasoning was applied in *Galanek v. Wismar* (1999) 68 Cal.App.4th 1417 [81 Cal.Rptr.2d 236] (*Galanek*), where a legal malpractice plaintiff was nonsuited because the trial court found she could not meet her burden of proving that the defendant's failure to preserve her car as evidence in the underlying products liability action against the car's manufacturer led to the entry of summary judgment for the car maker. The appellate court reversed, holding that the defendant lawyer's spoliation of the critical piece of evidence made it impossible for the plaintiff to prove she would have prevailed on the causation issue in the underlying case. Because the lawyer's negligent failure to preserve the car made it impossible for the plaintiff to prove causation, "as a matter of public policy it [is] more appropriate to hold [the lawyer] liable than to deny [the plaintiff] recovery, unless [the lawyer] can prove his negligence did not damage [the plaintiff]. [Citation.]" (*Id.* at p. 1426.)

We agree with Williams that *Galanek* is not directly applicable because it concerned the burden of proof at trial, and not the allocation of the burden of proving prejudice for purposes of discovery sanctions. However, its analysis of section 500's applicability to the spoliation of evidence issue does point the way to a similar result in this case. As noted above, Williams relies in part on the nonanalagous decision in *Mir v. Charter Suburban Hospital, supra*, 27 Cal.App.4th 1471, for the proposition that the moving party generally bears the burden of proof. And, as noted by us, that citation by the *Mir* court was merely an observational aside for the guidance of the trial court upon remand. The lone authority cited by the *Mir* court for this proposition was *Corns v. Miller* (1986) 181 Cal.App.3d 195, 200–201 [226 Cal.Rptr. 247] (*Corns*), which *was* a civil discovery sanctions case. The *Corns* court held that shifting the burden of proof was proper under section 500 where the issue was whether a party's lawyer advised his client to refuse to answer interrogatories. The *Corns* court reasoned that burden shifting was warranted because the facts at issue—what advice the lawyer gave—were peculiarly within the responding party's knowledge. (*Corns*, at p. 201.)

Therefore, under *Corns*, it may be proper to apply section 500 and shift the burden of proof in discovery sanctions motions. Under that section, burden shifting is proper when one's party wrongdoing makes it practically impossible for the plaintiff to prove its case. (*National Council Against Health*

*Fraud, Inc. v. King Bio Pharmaceuticals, Inc., supra,* 107 Cal.App.4th at p. 1346; *Galanek, supra,* 68 Cal.App.4th at p. 1426.)

█ The burden does not shift automatically. Instead, by analogy to decisions concerning the burden of proof at trial, we hold that a party moving for discovery sanctions based on the spoliation of evidence must make an initial prima facie showing that the responding party in fact destroyed evidence that had a substantial probability of damaging the moving party's ability to establish an essential element of his claim or defense. (See *National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc., supra,* 107 Cal.App.4th at pp. 1346–1347, and cases cited therein.) We conclude that Russ met this initial burden. █ As discussed above, there was ample evidence to support a finding that Williams intentionally destroyed the file. Slyngstad's declarations that he copied only the correspondence and that the file included materials such as notes, research, and other work product arising from Russ's representation of Williams, especially in regard to new claims made after the file was turned over to Williams, is sufficient to establish a prima facie showing of prejudice from the loss of the file. The burden was therefore properly shifted to Williams.

Although Williams claims there was no showing of prejudice sufficient to warrant a terminating sanction, this contention is merely a rehash of his earlier evidentiary contentions. As with those, the evidence is in conflict, requiring us to accept as true the statements by Russ and Slyngstad that the file contained his notes, pleadings, research, and other materials, and that Slyngstad copied only the correspondence. Because Williams bore the burden of disproving prejudice, he was required to show that any other documents from the file that he claimed existed would in fact have allowed Russ to adequately reconstruct the client file. He did not.[5]

As the *Cedars-Sinai* court noted, "[w]ithout knowing the content and weight of the spoliated evidence, it would be impossible for the jury to meaningfully assess what role the missing evidence would have played in the determination of the underlying action. The jury could only speculate . . . ." (*Cedars-Sinai, supra,* 18 Cal.4th at p. 14.) That is precisely what happened here when Williams permitted the destruction of his client file. That Russ at one time had that file and passed on the chance to copy its entire contents in no way mitigates Williams's intentional wrongdoing and the prejudice it caused. On this record, we hold that the trial court did not abuse its discretion when it imposed a terminating sanction for that misconduct.

[5] In fact, the record does not show that Williams ever supplied the trial court with, or has ever described, the contents of the 11 file boxes he did copy. Without those documents as a starting point, it seems impossible to determine whether those documents might have been sufficient for Russ to mount an adequate defense.

## DISPOSITION

For the reasons set forth above, the judgment dismissing Williams's complaint is affirmed. Respondents shall recover their appellate costs.

Cooper, P. J., and Bigelow, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 21, 2009, S168892.