Filed 11/17/15  Sulatycky v. Sajahtera, Inc. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ROBERT SULATYCKY, | B256972 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC463162) |
| v. | |
| SAJAHTERA, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Mel Red Recana, Judge.  Affirmed.

Law Offices of Rob Hennig, Hennig Ruiz, Rob Hennig, Brandon Ruiz for Plaintiff and Appellant.

Stokes Wagner Hunt Maretz & Terrell, Peter B. Maretz, Shirley Banner Gauvin for Defendants and Respondents.

## INTRODUCTION

Plaintiff and appellant Robert Sulatycky (plaintiff)—the former executive chef and director of food and beverage services at the Beverly Hills Hotel (the hotel)—appeals from the trial court's orders denying his motion, based on alleged spoliation of evidence, for a terminating or other sanction (terminating sanction motion) and granting the motion for summary judgment filed by defendants and respondents Sajahtera, Inc.[1] and Alberto del Hoyo (collectively Hotel).  Plaintiff contends that because the trial court applied an incorrect burden-shifting analysis in ruling on his terminating sanction motion, it abused its discretion when it denied the motion.  He further contends that the trial court erred in granting summary judgment against him because there were triable issues of fact as to his FEHA[2] discrimination and harassment claims.

We hold that because the record reflects that the trial court, using the correct legal standard, weighed and considered the evidence in support of and in opposition to the terminating sanction motion and thereafter made a reasoned decision based thereon, plaintiff has failed to demonstrate an abuse of discretion.  Moreover, even assuming that the trial court applied an incorrect burden-shifting analysis in ruling on the sanction motion, we hold that any such error was harmless because plaintiff concedes that he failed to show that the documents and records that were destroyed were relevant to some claim or defense in issue as required under controlling case law.  We further hold that because plaintiff concedes in his reply brief that he failed to make specific citations to the evidentiary record in his opening brief or set forth fairly all the significant facts relevant to his appeal from the summary judgment, and he has failed to remedy that procedural defect despite agreeing to do so, he has forfeited his challenge on appeal to the order

---

[1]    According to appellant's opening brief, Sajahtera, Inc. "is the name of the holding company used by the Sultan of Brunei for the Sultan's ownership of the Beverly Hills Hotel."

[2]    California Fair Employment and Housing Act, Government Code section 12900 et seq.

2

granting summary judgment. We therefore affirm the orders denying the terminating sanction motion and granting summary judgment.

## PROCEDURAL BACKGROUND

In June 2011, plaintiff and four of his former coworkers filed suit against Hotel. In the operative third amended complaint, plaintiff asserted (i) a FEHA sex discrimination claim based on the behavior of defendant del Hoyo—the hotel's general manager—in allegedly favoring women over men; (ii) a FEHA harassment claim based on allegations that the hotel's general manager harassed him because of his sex and forced him to engage in discriminatory employment practices; (iii) a FEHA claim for failure to prevent discrimination and harassment; and (iv) a claim for constructive discharge in violation of public policy.

In July 2013, Hotel filed a motion for summary judgment. Before plaintiff's opposition to the summary judgment motion was due,[3] he filed the terminating sanction motion based on alleged spoliation of evidence by hotel executives in November 2013. Hotel's opposition to the sanction motion was filed on January 2, 2014. Plaintiff filed his reply in support of the sanction motion on January 8, 2014. On January 15, 2014, the trial court held a hearing on the sanction motion and tentatively concluded that plaintiff had "not met [his] burden of being severely prejudiced. Plaintiff [had] not shown that the 'loss of this evidence' [had] a substantial probability of damaging [his] litigation position." At the request of plaintiff's counsel, however, the trial court allowed further briefing and evidentiary submissions from the parties.

After considering the further briefing and submissions on plaintiff's terminating sanction motion, the trial court ordered Hotel to produce for in camera inspection all documents it had recovered electronically, and in response, Hotel produced 12,000 pages

---

[3] On January 23, 2014, plaintiff filed his opposition to the motion for summary judgment. On January 31, 2014, Hotel filed its reply brief.

3

of documents. On February 20, 2014, the trial court, after reviewing all of the documents produced, affirmed its tentative ruling denying the sanction motion and further explained that "the Court found no document that was relevant or would reasonably be calculated to lead to the discovery of admissible evidence."

On March 18, 2014, the trial court heard oral argument on Hotel's summary judgment motion and, on March 24, 2014, the trial court issued an order granting summary judgment. Thereafter, the trial court entered a judgment of dismissal in favor of Hotel. Plaintiff filed a timely notice of appeal from that judgment.

## DISCUSSION

### A. Terminating Sanction Motion

#### 1. *Factual Background*

##### a. Plaintiff's Evidence

Prior to filing the complaint in this action, plaintiff sent a draft copy of it to the hotel on May 25, 2011. On June 20, 2011, plaintiff's attorneys were informed that one or more of the executives at the hotel had been observed shredding and dumping large amounts of documents. That day, plaintiff's attorneys sent a letter informing Hotel that its director of human resources, Eva White, might be destroying documents related to plaintiff's case.

During discovery, Hotel produced to plaintiff an investigative report prepared by the hotel's attorney, Peter Fischer. The report detailed Fischer's findings and recommendations based on his investigation of the allegations in plaintiff's complaint and plaintiff's claim of document destruction. Among other things, Fischer concluded that three hotel executives—White, Janet Jacobs, director of finance, and Darlene Adams, director of sales—"intentionally moved large portions of their e-mail record onto their hard drives or company-purchased digital storage devices so that their e-mail

4

correspondence could not be viewed . . . ." According to Fischer, "[a]fter an extensive analysis of this e-mail record, it is clear that there was still a great deal of correspondence that has still not been discovered."

During his deposition, Fischer was questioned about his report, and he confirmed the following concerning the document destruction issue: The hotel's new general manager, Ed Mady, asked Fischer to investigate the allegations in plaintiff's complaint. During the course of his investigation, Fischer interviewed 30 to 40 people. Because Fischer believed White may have destroyed evidence, he attempted to obtain video footage showing White at the hotel during the Memorial Day weekend, but was informed by the hotel's director of security that "we just don't have it."

Fischer confirmed that two hotel employees observed Jacobs shredding a large number of documents during the 2011 Memorial Day weekend. When Fischer asked Jacobs if she had shredded documents around that time, she initially denied it. [4] Fischer believed that Jacobs was lying to him and that she was aware of plaintiff's lawsuit by the time of the Memorial Day weekend.

During her deposition, White admitted that she saw a copy of plaintiff's complaint in May 2011. White denied shredding documents or throwing out documents in or around the 2011 Memorial Day weekend. She also denied throwing out any documents as a result of plaintiff's complaint. White explained that she shredded documents "all the time" in her human resources position. She estimated that she shredded between 10 and 200 pages of documents in a week. White denied taking bags of documents to the trash bins behind the hotel in May 2011.

---

[4]   In his investigative report, Fischer explained that after plaintiff's lawsuit was filed, "Jacobs sent an e-mail claiming that no records had been destroyed. However, when confronted with witness testimony that she indeed had been shredding information, . . . Jacobs modified her testimony to say that she shreds material 'all the time' as part of her job. Witness testimony in the [h]otel's finance department [did] not support her claims."

5

During her deposition, Adams admitted she saw a copy of plaintiff's complaint in or around June 2011. She was aware in June 2011 of allegations about document destruction, but denied that she had destroyed any documents.

During her deposition, Jacobs admitted she was aware of plaintiff's complaint in early June 2011. She denied shredding documents related to plaintiff's complaint. Jacobs admitted that she shredded documents around the 2011 Memorial Day weekend and explained that the documents were drafts of a PowerPoint presentation she was preparing for a quarterly financial meeting with executives of the hotel's management company, Dorchester Collection. Jacobs denied that she continued shredding documents through June 20, 2011. Jacobs claimed that she did not change her answer about shredding documents during Fischer's interview of her. She also denied shredding multiple pages of documents during the 2011 Memorial Day weekend.

During his deposition, the hotel's director of security, Matthew Karp, confirmed that security video footage from on or around May 30, 2011, was no longer in existence and he did not know what happened to it. Karp did not know if anyone had reviewed or created backup security video footage of anyone entering or exiting the financial office or human resources office from May 1, 2011, through June 30, 2011. After searching, Karp was unable to find any security video footage of the loading dock area between May 1, 2011, and June 30, 2011, because it had not been preserved. He was unaware whether anyone had viewed security video footage from the period May 1, 2011, to June 30, 2011.

During his deposition, hotel employee Porfirio Caamal explained that he worked the 2011 Memorial Day weekend. He observed Jacobs shredding documents for approximately an hour on either May 29 or May 30, 2011. About a week later, Caamal again observed Jacobs shredding documents for a half hour or an hour. Caamal found it odd that Jacobs was shredding so many documents that weekend because Jacobs's assistant usually did the shredding if it involved more than a couple of pages.

During his deposition, hotel employee Antwan Nivens explained that the paper shredder for the finance department was directly outside his office door. On a weekend,

6

he observed Jacobs shredding documents for about 20 minutes. Nivens recalled that the day he saw Jacobs shredding documents was Sunday, June 5, 2011. Nivens did not typically see Jacobs in the office on weekends. Nivens had not previously seen Jacobs shredding documents.

Plaintiff's computer expert, David McCain, was retained to "examine the forensic copies (mirror images) of five devices consisting of three computers and two external hard disk drives." The three computers were the company computers used by Adams, Jacobs, and White. McCain was "directed to examine [the] devices for deleted file/folder activity and other artifacts indicating possible missing files of relevance."

McCain determined that the computers used by Adams and Jacobs contained a program "'ccleaner,'" which is commonly referred to as a "'wiping program.'" It is specifically designed to thwart forensic analysis. There was a change made on each computer in that program's settings on June 18, 2011.

In the "recent" folder of Adams's computer, McCain found evidence of 35 files that were no longer on the system that were present in June 2011. A number of the files that were deleted from Adams's computer were nonrecoverable. Many of them were last accessed or created in June 2011.

The user of Jacobs's computer deleted a large number of files from the "My Documents" folder in June 2011. For example, McCain's review of the active link file showed the user accessing a folder named "Legal" in the user's "My Documents" folder that was no longer active or recoverable. The majority of the deletions from the "My Documents" folder were made on June 17 and 21, 2011. There also were data removed from the recycle bin on June 20, 2011. And there were 49 documents seen in the link file and office link file that were no longer on the system.

McCain did not find the wiping software "ccleaner" on White's computer, which suggested to him that it was not a program that was standard on all company computers. There were a large number of files deleted from White's computer in March and May 2011.

McCain determined that the computers used by Adams and Jacobs had been defragmented[5] on June 20 and June 21, 2011, respectively. Neither computer had any record of a defragmentation having been run prior to those dates. Due to the disk defragmentation of these two computers, it was impossible to determine the full extent of file records and data that were previously on the computers and were deleted. Such data were unrecoverable and there was no record of the existence of any of these overwritten files.

### b. Hotel's Evidence

In response to plaintiff's complaint and letter raising the document destruction issue, the hotel's new general manager, Ed Mady, sent an e-mail to hotel document custodians on June 21, 2011, to remind them not to destroy any documentary or electronic records. The letter also directed employees who had destroyed any electronic or documentary records to prepare and submit to the hotel manager a list of all such destroyed records.

On June 21, 2011, Hotel also seized the hard drives of the company computers used by Adams, Jacobs, and White. In addition to turning the hard drives over to plaintiff for analysis by his expert, McCain, Hotel hired its own computer expert, Michael Kunkel, to determine if hotel employees had wiped data from hard drives or deleted information relevant to the lawsuit. In conducting an analysis of the hard drives of the computers used by Adams, Jacobs, and White, Kunkel concluded as follows: (i) McCain neither stated, nor proved that the ccleaner had been run on any of the computers to destroy evidence; (ii) the vast majority of deleted files identified by McCain on the three

---

[5] In his declaration, McCain defined defragmentation as follows: "In a Windows based computer, a disk defragmentation takes files that are spread across a drive in a 'fragmented' state and organizes them so they are contiguous. The process of doing so overwrites the deleted data, making it unrecoverable."

computers were temporary files,[6] system files,[7] personal pictures, and non-user content; (iii) McCain's analysis of the defragmentation of Adams's computer was incomplete in relation to prefetch files,[8] and his defragmentation analysis on Jacobs's computer did not prove that defragmentation ever took place.

In addition, Hotel retained Fischer to investigate, inter alia, whether documents and computer files had been destroyed. In his investigation, Fischer pursued the allegations that White and Jacobs had destroyed documents relevant to the litigation, but he was unable to find any evidence of shredding by White and was unable to confirm that Jacobs shredded documents relevant to plaintiff's lawsuit. White testified that she "constantly shredded documents in human resources," but denied ever throwing out documents related to the litigation. Moreover, Fischer interviewed human resource department employees who reported that they did not believe any human resource records were missing. In addition, Fischer also interviewed security employees who advised that there were no reports from security officers "that there had been any unusual dumping of materials, shredding, anything like that, [by] Ava White." Jacobs explained that if she printed out a financial document she thought was confidential, it was her practice to shred it herself. She also testified that other than the drafts of the PowerPoint presentation or Excel spreadsheets on which she was working in preparation for the quarterly financial meeting, she did not shred any other documents during the 2011 Memorial Day weekend.

---

**6**     Kunkel defined a temporary file as "any file that is automatically created by the computer's operating system or software that is not directly interfaced with by the standard computer user. In many cases the computer user may not know a temporary file even exists. Temporary files are typically created and deleted by the computer without a user's knowledge."

**7**     Kunkel defined a system file as "any file associated with the computer's software or operating system that is not directly interfaced with by the standard computer user. This can include software files, the system's registry, etc."

**8**     Kunkel defined prefetch files as "similar to link files in that they reference a target file located elsewhere. However, prefetch files reference software and executable programs instead of documents. The existence of certain prefetch files as well as their embedded 'run count' contribute to the forensic analysis."

She expressly denied shredding anything related to plaintiff's lawsuit. When Fischer interviewed employees in the finance department, they reported that no records were missing.

On the issue of security video footage showing White or Jacobs throwing out bags of shredded documents, Fischer interviewed hotel employees, including the director of security, in an effort to obtain security video of "the security gate, the garbage area," and the "access to and from [the] human resources office." Fischer, however, was unable to locate any such video.

### 2. *Legal Principles*

A trial court's ruling on a motion for a terminating sanction, like its rulings on other sanction motions, is reviewed for an abuse of discretion. "'Discovery sanctions "should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery." [Citations.]'" The trial court has a wide discretion in granting discovery and . . . is granted broad discretionary powers to enforce its orders but its powers are not unlimited. . . . [¶] The sanctions the court may impose are such as are suitable and necessary to enable the party seeking discovery to obtain the objects of the discovery he seeks, but the court may not impose sanctions which are designed not to accomplish the objects of discovery but to impose punishment. [Citations.]'" [Citations.]' (*Laguna Auto Body v. Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481, 487-488 [282 Cal.Rptr. 530]; accord, *Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27, 35 [9 Cal.Rptr.2d 396].) '"The power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action. [Citations.] Only two facts are absolutely prerequisite to imposition of the sanction: (1) there must be a failure to comply . . . and (2) the failure must be willful [citation]." [Citation.]' (7 Cal.App.4th at p. 36.)" (*Vallibona v. Springer* (1996) 43 Cal.App.4th 1525, 1545.)

Among the sanction options available to a trial court is the so-called terminating sanction requested by plaintiff in this case. "As to terminating sanctions, Code of Civil

Procedure section 2023.030, subdivision (d) provides: 'The court may impose a terminating sanction by one of the following orders: [¶] (1) An order striking out the pleadings or parts of the pleadings of any party engaging in the misuse of the discovery process. [¶] (2) An order staying further proceedings by that party until an order for discovery is obeyed. [¶] (3) An order dismissing the action, or any part of the action, of that party. [¶] (4) An order rendering a judgment by default against that party.'" (*Doppes v. Bentley Motors, Inc*. (2009) 174 Cal.App.4th 967, 992.)

Spoliation or destruction of evidence in response to or in anticipation of a discovery request would be a misuse of discovery within the meaning of Code of Civil Procedure section 2023.030, subdivision (d) and therefore could serve as the basis for a terminating sanction. (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 12 (*Cedars-Sinai*).) "'Spoliation' is '"the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."'" (*Byrnie* [*v. Town of Cromwell Bd. of Education* (2001)] 243 F.3d [93,] 107 (*Byrnie*).) '[D]estruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction.' (*Kronisch v. U.S*. (2d Cir. 1998) 150 F.3d 112, 126 (*Kronisch*); see also *Cedars-Sinai*[, *supra,*] 18 Cal.4th [at p.] 11.) 'In order for an adverse inference to arise from the destruction of evidence, the party having control over the evidence must have had an obligation to preserve it at the time it was destroyed.' (*Kronisch*, *supra*, 150 F.3d at p. 126.) In addition, the party seeking the benefit of an inference from spoliation 'must demonstrate first that the records were destroyed with a culpable state of mind (i.e. where, for example, the records were destroyed knowingly, even if without intent to violate [a] regulation [requiring their retention], or negligently). Second, a party must show that the destroyed records were relevant to the party's claim or defense.' (*Byrnie*, *supra*, 243 F.3d at p. 109; but see *Cedars-Sinai*, *supra*, 18 Cal.4th at p. 14 ['there will typically be no way of telling what precisely the evidence would have shown and how much it would have weighed in the spoliation victim's favor'].)" (*Reeves v. MV Transportation, Inc.* (2010) 186 Cal.App.4th 666, 681-682 (*Reeves*).)

11

In cases in which the spoliation adversely impacts a plaintiff's ability to prove its case, "it may be proper to apply [Evidence Code] section 500 and shift the burden of proof in discovery sanctions motions.  Under that section, burden shifting is proper when one's party wrongdoing makes it practically impossible for the plaintiff to prove its case. (*National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.* [(2003)] 107 Cal.App.4th [1336,] 1346; *Galanek* [*v. Wismar* (1999)] 68 Cal.App.4th [1417,] 1426.)  [¶]  The burden does not shift automatically.  Instead, by analogy to decisions concerning the burden of proof at trial, we hold that a party moving for discovery sanctions based on the spoliation of evidence must make an initial prima facie showing that the responding party in fact destroyed evidence that had a substantial probability of damaging the moving party's ability to establish an essential element of his claim or defense.  (See *National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc., supra*, 107 Cal.App.4th at pp. 1346-1347, and cases cited therein.)"  (*Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1226-1227 (*Williams*).)

### 3.     Analysis

Plaintiff contends that because of the suspicious timing, circumstances, and extent of the destruction of the hotel's records, he was entitled, as a matter of law, to an inference that the destroyed records were both relevant and damaging to Hotel, citing *Cedars-Sinai, supra*, 18 Cal.4th 1.  Therefore, according to plaintiff, the trial court erred by applying the burden-shifting analysis in *Williams, supra*, 167 Cal.App.4th 1215, which required plaintiff to demonstrate affirmatively that, not only were the destroyed records relevant to a claim or defense in issue, but also that there was a substantial probability that the records were damaging to plaintiff's litigation position.  As plaintiff reads *Cedars-Sinai*, the destruction of records, by itself and without any showing of relevance, was sufficient to give rise to the evidentiary inference to which he claims entitlement.

We do not agree that the trial court applied the incorrect legal standard in ruling on plaintiff's terminating sanction motion.  Although the trial court's tentative ruling appears

12

to follow the standard set forth in *Williams, supra*, 167 Cal.App.4th at page 1227, by finding that plaintiff had failed to meet his "burden of being severely prejudiced," and had failed to show that the destruction of documents had "a substantial probability of damaging [plaintiff's] litigation position," the trial court's subsequent statements suggest otherwise. During oral argument, the trial court seemed to focus primarily on whether the destroyed documents were potentially relevant to some claim or defense, but not on whether they were also damaging to plaintiff's ability to present his case. Specifically, in response to argument from plaintiff's counsel, the trial court stated, "I am persuaded that, in fact, certain documents were destroyed. But the question then is why were those documents destroyed. You probably have your reasons, but were these documents irrelevant to this case?" In addition, after reviewing the further briefs, submissions, and the 12,000 documents electronically recovered by Hotel, the trial court in its minute order denying the motion found that none of the 12,000 recovered documents "was relevant or would reasonably be calculated to lead to the discovery of admissible evidence."

Therefore, notwithstanding the reference in the tentative ruling stating that plaintiff had not met the burden of showing that the destruction of documents had a substantial probability of damaging his case, it appears that the trial court required only that plaintiff show that the destroyed records had some relevance to a claim or defense. As explained below, we conclude that the threshold relevance standard relied upon by the trial court legally was correct and that the trial court did not commit legal error, as claimed by plaintiff, in ruling on the terminating sanction motion.

Plaintiff's assertion that, under *Cedars-Sinai, supra*, 18 Cal.4th 1, he was entitled to an evidentiary inference that relevant and damaging documents were destroyed is based upon a misreading of the holding in *Cedars-Sinai*. The court in *Cedars-Sinai, supra*, 18 Cal.4th 1 was not reviewing a ruling on a motion for a terminating sanction, but rather was deciding the discrete issue of whether to recognize an independent tort cause of action for damages based on spoliation of evidence. In refusing to recognize such cause of action, the court in *Cedars-Sinai* reasoned, inter alia, that the availability of other effective remedies, including an adverse evidentiary inference, militated against

13

recognizing a tort claim for evidence spoliation. "Weighing against our recognition of a tort cause of action for spoliation in this case are both the strong policy favoring use of nontort remedies rather than derivative tort causes of action to punish and correct litigation misconduct and the prohibition against attacking adjudications on the ground that evidence was falsified or destroyed. In particular, there are a number of nontort remedies that seek to punish and deter the intentional spoliation of evidence. [¶] Chief among these *is the evidentiary inference that evidence which one party has destroyed or rendered unavailable was unfavorable to that party*. This evidentiary inference, currently set forth in Evidence Code section 413 and in the standard civil jury instructions, has a long common law history. (See *The Pizarro* (1817) 15 U.S. (2 Wheat.) 227, 240 [4 L. Ed. 226] (per Story, J.); 2 McCormick on Evidence (4th ed. 1992) § 265, pp. 191-192; 2 Wigmore on Evidence (Chadbourn rev. 1979) §§ 278, 291, pp. 133, 221; Maguire & Vincent, *Admissions Implied From Spoliation or Related Conduct* (1935) 45 Yale L.J. 226.) For example, in the case of *Armory v. Delamirie* (1722 K.B.) 93 Eng. Rep. 664, a chimney sweep sought to recover a jewel he had given to a jeweler for appraisal. When the jeweler failed to produce the jewel at trial, the court instructed the jury 'that unless the [jeweler] did produce the jewel, and shew it not to be of the finest water, they should presume the strongest against him, and make the value of the best jewels the measure of their damages . . . .' (*Ibid.*) This court, too, has long recognized the appropriateness of this inference. (*Fox v. Hale & Norcross S. M. Co.* (1895) 108 Cal. 369, 415-417 [41 P. 308].) [¶] As presently set forth in Evidence Code section 413, this inference is as follows: 'In determining what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider, among other things, the party's . . . willful suppression of evidence relating thereto . . . .' The standard California jury instructions include an instruction on this inference as well: 'If you find that a party willfully suppressed evidence in order to prevent its being presented in this trial, you may consider that fact in determining what inferences to draw from the evidence.' (BAJI NO. 2.03 (8th ed. 1994).) Trial courts, of course, are not bound by the suggested language of the standard BAJI instruction and are free to adapt it to fit the circumstances of the case,

14

including the egregiousness of the spoliation and the strength and nature of the inference arising from the spoliation." (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 11-12, italics added.)

In discussing the evidentiary inference to which a party harmed by spoliation would be entitled, the court in *Cedars-Sinai, supra*, 18 Cal.4th 1, did not state or imply that the inference arises from the fact of destruction alone. To the contrary, the court in *Cedars-Sinai* made it clear that the inference arises only after a showing that "evidence" [9] was destroyed, i.e., testimony, records, documents, or material objects that are relevant to some claim or defense in issue. Given the plain language of *Cedars-Sinai*, it is clear that the inference upon which plaintiff relies is an inference that the destroyed records were damaging or harmful to the destroying party's case and that it arises only after some threshold showing by the injured party that the records were potential evidence, i.e., either relevant to some claim or defense in issue or, at a minimum, reasonably calculated to lead to the discovery of admissible evidence. (See *Kronisch, supra,* 150 F.3d at p. 126 ["[D]estruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction"]; *Reeves, supra,* 186 Cal.App.4th at pp. 681-682 ["the party seeking the benefit of an inference from spoliation 'must demonstrate first that the records were destroyed with a culpable state of mind . . . . Second a party must show that the destroyed records were relevant to the party's claim or defense'"].) Accordingly, because it appears from our reading of the record that the trial court required only that plaintiff show that the destroyed records had some relevance or relationship to a claim or defense in issue, we conclude that the court applied the correct legal criteria in ruling on plaintiff's terminating sanction motion.

---

[9]     Evidence Code section 140 provides: "'Evidence' means testimony, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact." Evidence Code section 210 provides: "'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."

Therefore, because the trial court considered and weighed the conflicting evidence under the appropriate legal standard and made a reasoned decision supported by substantial evidence based thereon, plaintiff has failed to demonstrate an abuse of discretion. "In reviewing the lower court's ruling for abuse of discretion, we do not reweigh the evidence or evaluate the credibility of witnesses. '"[T]he trial court is the judge of the credibility of the affidavits filed in support of the [motion or application under review] and it is that court's province to resolve conflicts." [Citation.] Our task is to ensure that the trial court's factual determinations, whether express or implied, are supported by substantial evidence. [Citation.] Thus, we interpret the facts in the light most favorable to the prevailing party and indulge in all reasonable inferences in support of the trial court's order.' (*Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618, 625 [43 Cal.Rptr.2d 774].)" (*Ryland Mews Homeowners Assn. v. Munoz* (2015) 234 Cal.App.4th 705, 712.)

Moreover, even if the trial court erroneously required that plaintiff demonstrate both the relevance of the destroyed documents and that their loss would be damaging to plaintiff's case, any such error was harmless. In his arguments in the trial court and on appeal, plaintiff concedes that it would be difficult, if not impossible, to demonstrate that the destroyed records contained information relevant to a claim or defense due to the nature and extent of the record destruction in issue. Thus, even under the correct legal standard discussed above, which requires some credible showing of threshold relevance, plaintiff's motion would have been denied because he admittedly could not present evidence from which a reasonable trier of fact could have inferred that relevant evidence had been destroyed.[10]

---

[10]     In his opening brief, plaintiff asserts that during the trial of the claims of coplaintiffs Tim Dupree, Nino O'Brien, and Wendy Giron "significant new evidence was presented as to [Hotel's] spoliation of evidence including the admission from [Hotel's] own expert, Kunkel, that electronic documents from [Hotel] were irretrievably lost. It is anticipated that these trial issues, including a Renewed Motion for Terminating Sanctions, will be raised in a forthcoming appeal from a defense verdict. [Plaintiff]

Plaintiff argues that even assuming the trial court did not abuse its discretion in denying the requested terminating sanction, he was nevertheless entitled to some form of evidentiary or monetary sanction. Because we have concluded that the evidence in support of the terminating sanction motion failed to make the requisite threshold showing that relevant evidence was destroyed, the trial court did not err in refusing to issue any sanction order.

## B.     Summary Judgment Motion

Hotel contends that plaintiff's factual statement on appeal violates Rules of Court, rules 8.204(a)(1)(C)[11] and 8.204(a)(2)(C).[12] According to Hotel, plaintiff's factual statement cites almost exclusively to his separate statement in opposition to the summary judgment motion, but not to the evidence submitted in opposition as required on appeal. (See *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 178, fn. 4; *Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1024-1025.) Hotel contends that plaintiff's factual statement is also deficient because it fails to set forth fairly all the significant facts relevant to his contentions on appeal and instead focuses solely on the facts favorable to plaintiff. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 402

---

believes it is appropriate to consider this evidence and [these] issues in deciding the spoliation issue as to himself."

Plaintiff does not specify the new "evidence" he wants us to consider, nor does he identify new "issues" he urges us to consider. Moreover, he does not request that we take judicial notice of any document and he does not move to consolidate his appeal from the order denying his terminating sanction motion with the unidentified "forthcoming appeal." We therefore decline to consider any new evidence or issues that were not before the trial court when it ruled on his terminating sanction motion.

[11]     Rules of Court, rule 8.204(a)(1)(C) provides in pertinent part: "(a) Contents [¶] (1) Each brief must: [¶] . . . [¶] (C) Support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."

[12]     Rules of Court, rule 8.204(a)(2)(C) provides in pertinent part: "(a) Contents [¶] (2) An appellant's opening brief must: [¶] . . . [¶] (C) Provide a summary of the significant facts limited to matters in the record."

["An appellant must fairly set forth all the significant facts, not just those beneficial to the appellant"].) Citing, inter alia, *State of California ex rel Standard Elevator Co., Inc. v. West Bay Builders, Inc.* (2011) 197 Cal.App.4th 963, 968, fn. 1, *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 745, and *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246, Hotel argues that we should deem plaintiff's arguments on appeal waived.

In his reply brief, plaintiff concedes that, in connection with his challenge to the order granting summary judgment, he failed to cite to the evidentiary record in his opening brief and that we have the discretion to refuse to consider the defective citations. "[Plaintiff] concedes error. The citations to the Separate Statements were and are not citations to the evidence as required by Cal. Rules of Court 8.204(a)(1)(C). . . . [Plaintiff] further recognizes that this court has discretion to refuse to consider these evidentiary citations . . . ." In addition, plaintiff expressly agreed to correct the error in a timely manner. "[Plaintiff] is inten[t] upon correcting this error and will do so shortly with a further reference to the evidentiary record as to each citation listed in [the opening brief] as to the Separate Statements."

Plaintiff's reply brief containing the foregoing concessions and representation was filed May 5, 2015. Notwithstanding his representation that he would remedy timely the fundamental defects in his opening brief, he did not file or seek leave to file a conforming brief prior to oral argument. Had plaintiff timely filed a request to submit a modified opening brief supported by an appropriate showing of good cause and if Hotel failed to show how the granting of such a motion would prejudice Hotel on appeal, we would have granted the requested leave. Given his concession of error and his failure to remedy timely that error, however, we conclude that plaintiff has forfeited on appeal his challenges to the trial court's ruling on Hotel's summary judgment motion. We therefore affirm that ruling.[13]

---

[13]     In his opening brief, plaintiff refers to the claims of coplaintiffs Tim Dupree and Nino O'Brien and requests that we take judicial notice of their claims to support his contention that he raised triable issues of fact as to his discrimination and harassment

18

At oral argument, plaintiff represented that he would file a conforming brief forthwith. In response, we informed plaintiff that the panel would discuss whether filing a revised opening brief at this juncture would be appropriate and, if the panel decided to grant leave to file such a brief, we would notify him of that decision. Approximately one week after oral argument, plaintiff, without receiving leave from this court to file a brief that complied with the requirements, lodged a revised opening brief and a motion for leave to file that brief. Because the motion contained no showing of good cause, we denied it. It should be noted that if plaintiff were allowed to file a revised brief, after oral argument and the matter having been submitted, a new briefing schedule would have to be instituted, which would be a burden on Hotel and this court.

It appears that even if we reached the merits of the trial court's ruling on the summary judgment motion, we would affirm that ruling. In making its ruling, the trial court concluded that there was no triable issue of fact concerning whether plaintiff suffered an adverse employment action because of discrimination or whether he was subjected to a hostile work environment. In doing so, the trial court relied on Hotel's evidence showing that plaintiff admitted to his therapist that he was resigning his employment voluntarily and for personal reasons unrelated to the reasons alleged in the complaint, as well as evidence that plaintiff never complained to management about his alleged mistreatment by Del Hoyo. In his opposition, plaintiff attempted to raise a triable issue of fact on his discrimination and harassment claims by relying on his declaration, excerpts from his deposition, and certain of his verified interrogatory responses to contradict his admissions to his therapist and his failure to complain about Del Hoyo's mistreatment. But it seems that plaintiff has not in this case raised a triable issue of fact by denying prior express or implied admissions, without explanation, such as those that he made to his therapist and by his conduct in failing to complain about mistreatment. (See *Alvis v. County of Ventura* (2009) 178 Cal.App.4th 536, 548-549.)

---

claims. Because we have resolved plaintiff's challenge to the order granting summary judgment on procedural grounds, we do not reach the merits of the request for judicial notice.

19

## DISPOSITION

The orders denying plaintiff's terminating sanction motion and granting Hotel's motion for summary judgment are affirmed. Sajahtera, Inc. and Alberto del Hoyo are awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MOSK, J.


We concur:


TURNER, P. J.


KRIEGLER, J.

20