Filed 3/25/21  Soofi v. Contreras Law Firm CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RASHEED SOOFI,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>CONTRERAS LAW FIRM et al.,<br><br>  Defendants and Respondents. | D076884<br><br><br>(Super. Ct. No. 37-2018-00040211-CU-PN-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Rasheed Soofi, in pro. per. for Plaintiff and Appellant.

Klinedinst, Heather L. Rosing, Daniel L. Agle, and Catherine M. Asuncion for Defendants and Appellants.

INTRODUCTION

After Rasheed Soofi filed a complaint against Contreras Law Firm and individual attorneys who had represented him in two separate legal matters, the defendants propounded discovery.  Soofi's initial response was incomplete, and after the parties engaged in the meet and confer process, the defendants filed a motion to compel discovery, which the trial court granted.

However, Soofi's amended responses to the discovery continued to lack compliance with the court's orders, and following the issuance of two additional orders that included monetary and evidentiary sanctions, the court eventually issued terminating sanctions, resulting in the dismissal of the entire action with prejudice.

Soofi contends the court improperly issued terminating sanctions, that it acted with bias in doing so and throughout the matter, and that it also incorrectly granted demurrer on two causes of action. We conclude the court did not abuse its discretion in issuing terminating sanctions, and because it terminated the entire action with prejudice, we do not reach the challenges to the demurrer or motion to strike. We further conclude the court did not act with bias in reaching its decision, and we will accordingly affirm.

I

BACKGROUND AND PROCEDURAL FACTS

In August 2018, Soofi filed a lawsuit against the Contreras Law Firm and Dolores Contreras, Anna Encinias, and Rene Degolier (collectively, Defendants).[1] He alleged four causes of action: (1) breach of fiduciary duty; (2) false promise, negligent misrepresentation, and concealment; (3) professional negligence and legal malpractice; and (4) fraud, intentional misrepresentation, and concealment.[2] He also sought exemplary damages, alleging malice, oppression, and fraud. Defendants filed a demurrer to the

---

[1] Soofi later amended the complaint to add Darlene Sandez as a defendant as well.

[2] Soofi hired Defendants to represent him in two cases, one based on a property dispute and the other a family law matter. The facts of the underlying lawsuits are not relevant to our disposition in this case.

2

first four causes of action and a motion to strike the request for exemplary damages. Soofi amended the complaint in October 2018.

On November 2, 2018, Defendants served their first set of discovery requests. Soofi filed a motion to stay discovery pending the outcome of the demurrer, a motion Defendants opposed, and the court ultimately denied.

Defendants filed a demurrer and motion to strike the first amended complaint on December 3, 2018. The court considered Soofi's late-filed opposition in rendering its decision. It granted the motion in part, dismissing the second and fourth causes of action without leave to amend. The court explained these causes of action had not been pleaded with sufficient particularity. It also granted the motion to strike the portions of the first amended complaint related to punitive damages and attorney fees. It denied Defendants' motion with respect to the first and third causes of action. Defendants filed their answer on February 27, 2019.

Soofi provided his first responses to discovery on December 19, 2018. On January 14, 2019, Defendants sent a meet and confer letter seeking supplemental responses. This letter identified several flaws, including that Soofi had altered the language of Request for Admission Nos. 19[3] and 20[4] in his responses, and the letter asked him to amend his response to reflect the

---

[3]    Request for Admission No. 19 asked Soofi to "[a]dmit that had YOU read any of the documents provided to YOU by defendants in the PROPERTY CASE, YOU would not have bought the PROPERTY." Soofi modified the request to read, "Admit that YOU read any of the documents provided to YOU by defendants in the PROPERTY CASE."

[4] Request for Admission No. 20 asked Soofi to "[a]dmit that YOU admitted that had you read any of the documents provided to YOU by the defendants in the PROPERTY CASE, YOU would not have bought the PROPERTY, in YOUR DEPOSITION." Soofi treated the word "defendants" in this admission as the defendants in the malpractice lawsuit he filed rather than the defendants in the property matter.

3

requests as originally worded. It noted that he had referenced emails in response to Special Interrogatory No. 19, but those emails were not included in the document production as requested. And it explained that there were inconsistencies and missing information related to Form Interrogatory No. 6.5 regarding medication and treatment required as a result of Soofi's relationship with Defendants.[5]

Soofi responded to the meet and confer letter on February 16, 2019, and Defendants replied February 28.

On March 5, 2019, Defendants emailed and mailed Soofi another meet and confer letter, requesting a reply by March 11, 2019. On March 6, 2019, Soofi emailed Defendants and said he would not respond until he received a hard copy of the correspondence in the mail. He emailed March 8, 2019 to say he had not received a hard copy of the correspondence and could not meet the March 11 deadline. Defendants offered to extend the deadline. On March 11, Soofi emailed again and told Defendants he could not open PDF files on his phone, and he did not have internet access at home. Defendants then provided a Word version of the letter. Defendants informed Soofi they would file a motion to compel because he was refusing to provide any substantive response, or even a timeline for providing amended responses to the discovery.

---

[5] Form Interrogatory No. 6.5 asked Soofi what medication he had been taking as a result of the injuries caused by Defendant's alleged misconduct during their legal representation. Soofi provided a list of medications prescribed by "various provide[r]s" on "various dates" "[s]ince June 2017." He did not produce documentation of the medication prescriptions, as requested by Request for Production No. 3. Instead, he provided documents pertaining to psychological treatment which did not reference the medications or his relationship with Defendants.

4

Defendants filed a motion to compel further responses to their discovery requests on March 15, 2019. They sought monetary sanctions for abuse of discovery.

Soofi provided second amended discovery responses on March 25, 2019. These consisted of objections to the requests.

On April 19, 2019, the court ruled that Soofi had not shown he was "substantially justified in failing to timely serve amended responses or show[n] that his objections to the discovery requests were valid." It awarded $2,000 in sanctions and directed Soofi to produce the requested documents within five court days and to complete the discovery responses within 15 court days.

Soofi provided third amended responses to discovery April 24, 2019. Defendants sent meet and confer correspondence in reply on May 1, 2019, which Soofi responded to the following day.

Soofi provided fourth amended responses May 10, 2019.

On May 20, 2019, Defendants filed an ex parte application to shorten time to file a motion for an order to show cause regarding contempt and further motions to compel responses and production of documents. The court granted this motion and set a hearing for terminating sanctions for June 28, 2019. Soofi asked to move this hearing date because it conflicted with his travel outside the country, and the court agreed.

Defendants moved for terminating sanctions, arguing Soofi had refused to comply with the court's April 19, 2019 order. They noted that Soofi responded to discovery requests in a single document, included only a single verification, and contained variants of the statement that he did not have more to say on the matter. Soofi's opposition argued that he had complied with all discovery statutes and with the court's order. He also argued that he

5

had been unjustly ordered to provide more discovery without detail regarding what that discovery was. He had paid $100 of the $2,000 sanction and planned to pay monthly in similar increments.

Following a hearing on June 21, 2019, the court issued a ruling in which it highlighted some of Soofi's insufficient responses.[6] The court expressed concern that Soofi was not acknowledging and correcting his failures and indicated it would issue non-monetary sanctions if Soofi did not properly supplement discovery responses by July 26, 2019. The court awarded additional monetary sanctions in the amount of $6,000.

Soofi served fifth amended discovery responses July 24, 2019. The parties exchanged emails July 24, 25, 26, and 29.[7] Following these communications, Defendants moved for sanctions again. They argued Soofi had paid only $400 of the $8,000 in sanctions, which was due in full by July 31, 2019. They also highlighted several form interrogatories and special interrogatories to which they alleged Soofi had not adequately responded.

Soofi's opposition argued the only complaints to his amended responses really regarded document production, but he had provided to Defendants all the documents "in relevance to this action that I currently have in my possession, barring some information that may be discovered later . . . ." He also insisted that he had "satisfactorily answered" all interrogatories and requests for admissions and that he had no income to pay the sanctions.

---

[6] The court identified specific problems with Soofi's responses to Form Interrogatory Nos. 6.5 and 17.1, Special Interrogatory Nos. 1, 13, and 27, Request for Admission Nos. 19 and 24, and the single response he provided to all 20 Requests for Production.

[7] A copy of these emails was not provided in the record but were lodged directly with the superior court at the time.

Following a hearing August 23, 2019, the court issued a ruling that detailed deficiencies with Soofi's responses to Form Interrogatories Nos. 6.5 and 17.1, Special Interrogatory No. 1, and the request for production related to Special Interrogatory No. 25, among others. The court noted that Soofi had shown efforts to supplement his responses, but his failure to acknowledge his insufficiencies was problematic. It also noted monetary sanctions had been an insufficient motivator for compliance. The court imposed evidentiary sanctions and awarded $4,000 to Defendants. It also warned Soofi that noncompliance, even a single failure to comply with the court order, would result in terminating sanctions.

Soofi produced sixth amended responses and a supplemental production of documents on September 5, 2019.

On September 13, 2019, Defendants filed a motion for terminating sanctions, arguing Soofi's responses were improper, highlighting among other problems the continued insufficient response to Request for Admission No. 19, which did not match the propounded request, the problems with his response to Form Interrogatory No. 17.1, and the incomplete nature of the production of documents.

In his opposition, Soofi argued he was a self-represented plaintiff with no previous exposure to the legal profession and acknowledged he made numerous mistakes in litigating his claim due to his misunderstandings of procedural requirements. He argued that he never refused to provide discovery responses, he responded in timely fashion, he complied with the court's April 19, June 21, and August 23 orders, and he made monthly payments on his sanctions. Then he argued the dispute regarded only six problems, which he characterized as insignificant.

The court explained that Soofi's failure to answer questions and comply with discovery requirements was impeding Defendants' ability to form its affirmative defenses, causing them to operate in the dark.  Following the hearing, the court granted terminating sanctions, dismissing the entire action with prejudice.  This appeal timely followed.

## II

## DISCUSSSION

### A.  *Terminating Sanctions*

" 'California discovery law authorizes a wide range of penalties for conduct amounting to "misuse of the discovery process," ' including terminating sanctions.  [Citations.]" (*Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 390 (*Los Defensores*), citing Code Civ. Proc., § 2023.030.)  Code of Civil Procedure "[s]ection 2023.030 authorizes a trial court to impose monetary sanctions, issue sanctions, evidence sanctions, or terminating sanctions against 'anyone engaging in conduct that is a misuse of the discovery process.' " (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 991.)  Misuse of the discovery process includes " '[f]ailing to respond or to submit to an unauthorized method of discovery' [citation] '[m]aking, without substantial justification, an unmeritorious objection to discovery' [citations]; '[m]aking an evasive response to discovery' [citations]; and '[d]isobeying a court order to  provide discovery' [citations]." (*Ibid.*, citing Code Civ. Proc., § 2023.010, subds. (d)-(g).)

A trial court has broad discretion to impose discovery sanctions, subject to reversal only if the court's action is arbitrary, capricious, or whimsical. (*Los Defensores*, *supra*, 223 Cal.App.4th at p. 390.)  "In general, a court may not impose issue, evidence, or terminating sanctions unless a party disobeys a court order." (*Moofly Productions, LLC v. Favila* (2020) 46 Cal.App.5th 1,

11.)  This requirement " 'provides some assurance that such a potentially severe sanction will be reserved for those circumstances where the party's discovery obligation is clear and the failure to comply with that obligation is clearly apparent.' " (*Ibid*.)  However, a trial court may order terminating sanctions for discovery abuse after considering the totality of the circumstances:  (1) whether the party's actions were willful; (2) any detriment to the propounding party; (3) and the informal and formal efforts to resolve the dispute.  (*Los Defensores*, *supra*, 223 Cal.App.4th at p. 390.)

We review a court's entry of an order granting terminating sanctions for abuse of discretion.  (*Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc.* (2008) 163 Cal.App.4th 1093, 1101-1102 (*Liberty Mutual*).)  The appellant bears the burden of establishing the court abused its discretion.  (*Kennedy v. Superior* Court (2006) 145 Cal.App.4th 359, 366.)  "We presume the trial court's order was correct and indulge all presumptions and intendments in its favor on matters as to which it is silent."  (*Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1224; *Los Defensores*, *supra*, 223 Cal.App.4th at pp. 390-391.)

Soofi argues that he initially made mistakes in his responses to discovery because he misunderstood the discovery statutes, did not have an experienced attorney guiding him through the process, and only had access to an old computer with technological limitations and the law library, but no internet access at home.  He contends he is the victim of "clever counsel" who confused him by serving meet and confer letters knowing he would have difficulty meeting the timeline requested and who "bank[ed] on" an "empathetic Court for good results."  He also insists that any noncompliance was not willful and therefore did not justify terminating sanctions.

9

In Soofi's first set of discovery responses, he provided one response to all Defendants for each type of propounded discovery request, failed to provide all the requested documents, and submitted several answers that were incomplete. By his seventh amended responses, he had addressed many of the initial deficiencies, but not all of them. And those corrections came after repeated attempts at informal resolution through meet and confer correspondence over a period of nearly 10 months and after the court repeatedly ordered compliance and issued monetary and evidentiary sanctions. The court recognized Soofi's improvements and told Soofi it was taking an incremental approach to issuing sanctions, and it detailed the specific problems with Soofi's responses multiple times. But Soofi continuously failed to correct persistent errors.

Although Soofi maintains that he had attempted to cure his deficiencies and had not actually refused to provide discovery responses, his failure to actually repair the issues and provide responses that directly addressed the admissions and other information sought may as well have been a refusal. Whether or not Soofi's nonresponsiveness was willful, as the court explained, his failure to provide the requested discovery impeded Defendants' ability to mount an affirmative defense. (*Los Defensores*, *supra*, 223 Cal.App.4th at p. 390.)

The court told Soofi the terminating sanctions were being issued not just because of a failure to answer a single question or a failure to comply with requirements in a single regard, but because Soofi's errors were replete and multitudinous. It acknowledged that it could not know what was in Soofi's heart, but when it considered all the circumstances objectively, it concluded Soofi had repeatedly failed to comply with discovery requests, with court orders, with payment of sanctions, and with the discovery process more

10

broadly.  It also explained that Soofi's failure to answer the discovery requests and comply with the discovery requirements was impeding Defendants' ability to develop its affirmative defenses and causing them to operate in the dark.  (See *Los Defensores*, *supra*, 223 Cal.App.4th at p. 390.) The trial court's decision to terminate the action, in light of the totality of the circumstances, was not arbitrary or capricious (*ibid*), and it therefore did not abuse its discretion.  (See *Liberty Mutual*, *supra*, 163 Cal.App.4th at pp. 1101-1102.)

Even accepting that Soofi simply misunderstood discovery statutes and requirements initially, he continuously provided incomplete or nonresponsive information to Defendants for 10 months and over the course of seven sets of amended responses.  This was ample time to correct his errors and supplement the information sought by Defendants.  And while we recognize that Soofi is an in propria persona litigant, " 'such a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.  [Citation.]'  [Citation.]  Thus, as is the case with attorneys, pro. per. litigants must follow correct rules procedure. [Citations.]"  (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247 (*Nwosu*).)

Finally, because the terminating sanctions dismissed the "entire case," this included the court's earlier order sustaining the demurrers and the motion to strike.  Accordingly, we need not evaluate the court's reasoning regarding its earlier order.

## B.  *Judicial Bias*

Soofi argues that the court's determinations were fraught with bias and the result of impatience and favoritism for Defendants, warranting reversal and a different judge on remand.

11

## 1. Additional Facts

### *April 19, 2019 Hearing*

At the April 2019 hearing, Soofi told the court he had responded to the discovery requests to the best of his ability "without jeopardizing the merit" of his case. Soofi complained to the court about a variety of issues[8] before he addressed the discovery issues before the court. He told the court he had complied with discovery rules and did not understand the motion to compel. The court told Soofi that in representing himself, he was required to abide by all the rules of law, rules of court, and rules of discovery, and it explained it could not give him legal advice. The court told Soofi that the problems with his discovery responses were explained and written out, referring to the meet and confer communications and the motion to compel. The court also suggested to Soofi that he could ask opposing counsel to reiterate the information in the hallway after the hearing.

### *June 21, 2019 Hearing*

At the June 21, 2019 hearing on Defendants' motion for sanctions, Soofi told the court there were a number of inaccuracies in the information upon which the court had based its decision. After Soofi argued that he had provided the requested information during the discovery process, the court asked him if he had explained everything in his pleadings, and Soofi said he had. The court told him it had read and considered Soofi's papers. Soofi said he was concerned the court may have missed reading some areas, and the

---

[8] He did not think it was appropriate that Defendants had scheduled a hearing date for a motion to compel before knowing whether his responses would be satisfactory. He had to print materials one at a time in order to provide them. He was having difficulty receiving discovery responses. He was "harasse[d]" during his deposition to share notes he took while being deposed.

12

court told Soofi to just highlight the points. Soofi told the court he lost track of his thoughts, and the court told him to take some time.

When Soofi began speaking about what had occurred during two previous hearings before the court, the court interrupted him and said it needed to take recess in a few minutes and to give opposing counsel an opportunity to respond. The court permitted Soofi to read an additional page of his argument. Soofi continued to argue for several more minutes, and he made arguments again after opposing counsel spoke.

Soofi asked the court to supply a list of discovery deficiencies, and the court directed him to discuss them with opposing counsel.

*August 23, 2019 Hearing*

At the August 23, 2019 hearing on Defendants' motion for sanctions, the court detailed several deficiencies in Soofi's discovery responses, including the incomplete response to Form Interrogatories Nos. 6.5 and 17.1. It outlined what information was missing. Soofi told the court he had not been properly heard because he was a self-represented plaintiff, complained that the court had used language from Defendants' papers in its ruling, and suggested the court had not read his arguments or had done so poorly.

After making several arguments, he commented twice more that it seemed the court did not read his opposition or his declaration, and the court responded: "Everything that you filed was read thoroughly by this Court. I can guarantee you that." But Soofi insisted the court missed information in its reading of the materials. Following some additional argument by Soofi, the court asked him to wrap up his argument because Soofi had given a five-minute estimate. Soofi told the court he had actually requested 15 minutes, then continued reading from his papers. The court told him that it had already read all his papers, and Soofi did not need to read them to the court.

13

Soofi disagreed, and the court explained that the information had been presented in writing, and unless Soofi had new information, he did not need to repeat it—and that was true for anyone appearing in the court.

Soofi replied, "But, your Honor, I'm disputing whether it's been read because it's obvious information here that has not been—" The court again told Soofi that it had read the materials. Soofi continued identifying items from his filing.

Soofi asked the court if it had an obligation to tell Soofi the ways in which Soofi had not complied with discovery requests, and the court responded that it was not his attorney, and that it had already "spelled out in great painstaking detail the deficits in the discovery responses." The court noted that it had looked at the information impartially and fairly, as it does with any attorney or party. Soofi then told the court: "I [am] 63 years old. My IQ is higher than 99 percent of the population. English is my third language. I have highest educational degree this land can offer. I've traveled extensively. [¶] If I, as plaintiff in pro per, cannot represent myself and cannot read the law, I have reviewed hundreds and hundreds of case laws and hundreds of statutes, if I cannot understand what a statute is asking, nobody else can." He continued, "I'm telling you that every statute has been complied. The three citation that—four citation that your assistant probably reviewed in this case have mentioned . . . have been responded properly according to law."

The court told Soofi that Soofi was questioning its judgment, which was not a good path, that Soofi had thrice accused the court of not reading his pleadings, but it had read every word of Soofi's pleadings. Soofi said, "I apologize if I insulted the Court." The court told Soofi it was applying the law.

Soofi accused the court of having already decided it would terminate the case, and the court clarified that it could not prejudge what would occur, but if it were shown that Soofi did not comply with the court order, there was a possibility of terminating sanctions: "I can't say that's going to happen now. I'm not going to prejudge it. We'll see what your responses are. You've got an additional opportunity to comply with the Court's order."

The court told Soofi it needed to move on, and it understood his position. Soofi asked to go on the record that he was not being properly heard. Soofi began to argue that he had suffered emotional harm, and the court interrupted him to conclude the matter.

*October 16, 2019 Hearing*

At the October 16, 2019 hearing at which terminating sanctions were issued, the court explained that Soofi's failure to answer questions and comply with discovery requirements was impeding Defendants' ability to bolster its affirmative defenses, causing them to operate in the dark. After back-and-forth about the volume of discovery issues and the repetitious non-compliance, Soofi argued that the court was saying he could not bring a complaint because he was not a lawyer and could not afford a lawyer. The court replied, "That's in no way, shape, or form the basis of what I've been talking about."

Before closing out the matter, the court reiterated that its decision had nothing to do with Soofi's self-representation or whether he could afford an attorney, but instead was the result of persistent failure to comply with the court's discovery orders.

15

## 2. Analysis

Every litigant has a due process right to an impartial decisionmaker.[9] (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.) Due process requires judicial disqualification only under the " 'most "extreme facts." ' " (*People v. Cowan* (2010) 50 Cal.4th 401, 456-457.) The appellant bears the burden of showing the actual probability of bias by the judge. (*Id.* at p. 456.) It is not our role to examine whether the trial court's comments may have been better left unsaid or whether the trial judge's behavior left something to be desired. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589.) Further, a trial court's rulings against a party do not establish judicial bias. (*Andrews v. Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 795-796.)

Soofi cites to *Catchpole v. Brannon* (1995) 36 Cal.App.4th 237, 247 (*Catchpole*) for the proposition that the appearance of bias requires reversal of judgment. However, our Supreme Court has disapproved of this proposition, noting that the trial court's behavior in *Catchpole* "amounted to a showing of actual bias based on comments by the judges" because it involved

---

[9] Soofi's briefing confuses the constitutional due process right to an impartial jurist with the statutory right to disqualify a judge for bias. The statutory basis for disqualifying judges is provided in Code of Civil Procedure section 170.1, and other sections detail the procedures for determining the motion. Review of such a determination is available only through a petition for writ of mandate. (See *People v. Freeman* (2010) 47 Cal.4th 993, 1000 (*Freeman*).) In any event, the record does not reveal that this procedure was used in this matter, and we accordingly address only the issue of judicial bias under due process.

a pattern of conduct that "rendered a fair trial impossible."[10] (*Freeman,*
*supra,* 47 Cal.4th at p. 1006, fn. 4.)

Soofi's citation to *Liteky v. United States* (1994) 510 U.S. 540 is also
unhelpful to his argument. The U.S. Supreme Court there explained that
judicial remarks "that are critical or disapproving of, or even hostile to,
counsel, the parties, or their cases, ordinarily do not support a bias or
partiality challenge. They *may* do so if they reveal an opinion that derives
from an extrajudicial source; and they *will* do so if they reveal such a high
degree of favoritism or antagonism as to make fair judgment impossible. . . .
*Not* establishing bias or partiality, however, are expressions of impatience,
dissatisfaction, annoyance, and even anger, that are within the bounds of
what imperfect men and women, even after having been confirmed as federal
judges, sometimes display. A judge's ordinary efforts at courtroom
administration—even a stern and short-tempered judge's ordinary efforts at
courtroom administration—remain immune." (*Id.* at pp. 555-556.) Even if
the trial court's behavior here demonstrated impatience, dissatisfaction, or
annoyance with Soofi, the court did not indicate a high degree of favoritism

---

[10]    In his reply brief, Soofi compares his situation to the situation of the
wife in *In re Marriage of Iverson* (1992) 11 Cal.App.4th 1495, 1499-1500.
There, the court's statements indicated preconceptions about the parties
based on their gender, and the preconceptions influenced the court's
perceptions of the parties' credibility. We find the comparison inapt as the
court in *Iverson* made biased statements about the parties' genders while the
court here merely stated the law regarding self-represented litigants.
Moreover, the Supreme Court disapproved of *Iverson* for the same reason it
disapproved of *Catchpole*: although language in those decisions addressed
the appearance of bias, the facts demonstrated actual bias. (*Freeman, supra,*
47 Cal.4th at p. 1006, fn. 4.) Cases that involve the mere appearance of bias,
without the probability of bias, should be resolved under disqualification
statutes, not as violations of the due process clause. (*Id.* at p. 1005.)

for Defendants; nor was the court so antagonistic toward Soofi that it made fair judgment impossible.

Soofi maintains that the trial court's behavior was not "incidental temperamental impatience." He describes the court as "disinterested," "half attentive," "missing the point," "pretending to be listening," belittling, rushing plaintiff and cutting him off, and Soofi maintains this behavior continued "all the way through the last hearing on this case." Soofi also complains that the court told him it could not give him advice and suggested he consult with an attorney, which he claims was evidence that the court had deemed him incompetent, implying bias against self-represented litigants.

Our review of the transcripts does not uncover evidence of either apparent or actual judicial bias. The court raised Soofi's status as a litigant in propria persona only at the first hearing, to explain that in representing himself, Soofi was required to abide by all the rules of law, rules of court, and rules of discovery, and it explained it could not give him legal advice. But that does not reflect any bias; it reflects the status of the law. (*Nwosu*, *supra*, 122 Cal.App.4th at p. 1247 [propria persona litigants entitled to same consideration as licensed attorneys].) In subsequent hearings as well as filings, it was Soofi who raised his self-represented status as an issue repeatedly.

During the August 2019 hearing, Soofi argued he was not properly being heard because of his self-represented status, and it was only after Soofi asked the court if it was obligated to tell him all the ways in which he had failed to comply with discovery requirements that the court said it was not his attorney. Even so, the court provided him details regarding the deficiencies in his discovery responses. In his opposition to Defendant's second motion for terminating sanctions, Soofi argued his status as a self-

18

represented party explained his failures, implying it justified the discovery deficiencies. And during the October 2019 hearing, it was Soofi who referenced his status as a pro per litigant, arguing he believed the court's ruling meant he could not bring a complaint because he was not a lawyer and could not afford lawyers.

Soofi also asserts the court was biased because it did not identify for him explicitly on the record what to do to bring his discovery responses into compliance, instead directing Soofi to read the correspondence from opposing counsel, which detailed that information, and suggesting Soofi talk with opposing counsel to ask for clarification. While the court did direct Soofi to communicate directly with opposing counsel for this information, it also detailed for him deficiencies in his discovery responses, both orally during hearings and in its written discovery orders.

It appears that Soofi's frustration is not really that the court did not hear him, but that the court did not agree with him. At the June 21 hearing, Soofi told the court he believed the court missed some of his arguments in reviewing the papers he submitted. And at the August 23 hearing, Soofi told the court it seemed the court had not read his opposition or his declaration and that the court missed information in reading his materials. Then, after repeatedly disputing whether the court had read his papers Soofi told the court that he had complied with every statute, that if he could not understand what a statute was asking, no one could, that it was probably the court's assistant who had reviewed the paperwork, and that the deficiencies the court had identified had been responded to properly. Even then, the court's response was measured, telling Soofi it had read every word of his pleadings. And after Soofi apologized "if [he] insulted the [court]," the court explained that it was simply applying the law. There is simply nothing in

19

these exchanges that indicates the court was biased against Soofi because of his status as a litigant in propria persona.

Finally, Soofi argues that the court's denial of his separate ex parte requests for access to discovery showed bias and were material to his ability to defeat Defendants' motion for terminating sanctions. But Soofi merely needed to comply with the discovery statutes to avoid terminating sanctions here. He does not explain how or why the court's decision to deny an ex parte request to compel a third-party witness to deposition or to deny any of his other discovery requests has anything to do with his ability to defend against the motion to compel at issue here.[11] (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [when appellant fails to support a point with reasoned argument, we treat that point as waived].)

---

[11] Soofi references these discovery motions in the context of the court's alleged bias. However, these discovery requests and orders are not the subject of this appeal, which focuses on the order issuing terminating sanctions.

DISPOSITION

The judgment is affirmed.  Parties to bear their own costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


DATO, J.