Filed 11/17/21  Brown v. Starwood Hotels & Resorts Worldwide CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARY BROWN, | B304363 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC665796) |
| v. | |
| STARWOOD HOTELS & RESORTS WORLDWIDE, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kristin S. Escalante, Judge.  Affirmed.

Vaziri Law Group, Siamak Vaziri and Mark J. Giannamore for Plaintiff and Appellant.

Murchison & Cumming and Edmund G. Farrell for Defendant and Respondent.

Mary Brown appeals the judgment entered after the trial court granted summary judgment in favor of Starwood Hotels & Resorts Worldwide, Inc. in Brown's premises liability and negligence lawsuit. Brown's principal contention on appeal is that the trial court should have imposed evidentiary and issue sanctions and denied summary judgment because Starwood failed to preserve surveillance video footage of her fall at a Starwood-managed facility. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Brown's Fall*

In late June 2015 Brown was staying at the Sheraton Fairplex Hotel & Conference Center (Sheraton Fairplex) in Pomona with her great-granddaughter, who was participating in a beauty pageant being held at the conference center. Starwood managed the Sheraton Fairplex during the relevant time period.[1] At 1:30 p.m. on the last day of her stay, Sunday, June 28, 2015, Brown tripped as she was leaving the conference center and fell into the glass doors at the entryway and onto the hard surface (terrazzo) interior floor. Paramedics were called, and Brown was taken to the Pomona Valley Hospital for X-rays and treatment.

---

[1] A separate entity, Fairplex, owned the building where Brown fell. The facility was managed by Starwood, which owned the Sheraton brand. As reported in its 2016 Form 10-K, in September 2016 Marriott International, Inc. completed the acquisition of Starwood Hotels & Resorts Worldwide, Inc. (Marriott Financial Reports and Proxy <https://marriott.gcs-web.com/static-files/eb3efa90-4311-454f-a430-0e03f2344ee0> [as of Nov. 17, 2021], archived at <https://perma.cc/ZTB8-364U>.

### 2. *Brown's Lawsuit*

On June 20, 2017 Brown filed an unverified complaint against Starwood for premises liability and negligence. In her complaint Brown alleged, when she was walking out of the conference center on June 28, 2015, she tripped on a foreign object that had been left unattended on the floor, creating a dangerous condition. Brown further alleged Starwood failed to maintain the floors of the conference center in a reasonably safe condition, and Starwood knew, or in the exercise of reasonable care should have known, a foreign object on the floor in an area where hotel and conference center guests walked created an unreasonable risk of harm to its guests.

In special interrogatory responses served in March 2018, Brown averred that, while leaving the conference center, she "tripped on a mat, that was misshapen, misplaced, unsecured or otherwise defective, in front of Defendant's doorway. [Brown] fell forward striking her head and body on Defendant's glass door."

### 3. *Brown's Deposition*

Starwood deposed Brown on May 8, 2018. Brown testified she was walking across the hard floor surface toward the doors to leave the conference center, looking straight ahead to the outside, when she felt a "catching feeling" and started to fall forward. She described her feet as going three or four steps forward in "perpetual motion" as she tried to stop herself. Her head, left shoulder and right arm or shoulder hit the glass sliding doors, and she fell to the ground.

Brown testified she believed there was a mat on the hard surface floor leading to the conference center entrance, approximately three to five feet from the door. However, Brown explained that before the fall she was not looking at the ground

3

and does not recall seeing a mat on the floor. Nor was she aware she was crossing a mat when her foot caught. Once she had fallen, she did not look around to see what may have caused her to fall. Brown also had no recollection of a mat being on the floor inside the sliding glass doors at the entrance to the convention center at any time during the three days she was attending the pageant with her great-granddaughter.

At the time of her fall Brown was wearing Sketchers walking shoes with a rip toward the right heel, a tear forming on the left heel and significant wear on both shoes near the toe.

4. *Starwood's Motion for Summary Judgment*

The month after Brown's deposition Starwood moved for summary judgment or, in the alternative, summary adjudication as to each of Brown's two causes of action, asserting there was no evidence the area where Brown fell was unreasonably slippery or contained any material or object that created a danger of slipping or tripping. Accordingly, Starwood argued, Brown could not prove breach of duty or causation.

In addition to portions of Brown's deposition testimony explaining she had not seen a mat before, during or after her fall, Starwood's supporting papers included excerpts from the deposition testimony of Sheraton employee Charles Bakewell, who arrived at the accident scene approximately two minutes after Brown fell. Bakewell testified he checked the interior terrazzo floor where the accident had occurred, as well as the surrounding area, when he arrived to determine what may have caused Brown's fall, specifically looking for a mat, debris or spilled water. He did not see anything that could have contributed to the fall. Bakewell had not received any complaints about the flooring, entryway or front doors prior to Brown's fall.

In a declaration submitted with Starwood's moving papers, Paolo Dimailig, the manager on duty, similarly stated he learned of Brown's fall within a few minutes of the incident and walked over to the conference center where Brown was receiving medical attention while still sitting on the floor. Dimailig inspected the hard surface floor at and near where Brown fell and did not see any mats, debris, water or any other noticeable substances that could have contributed to the fall.

In his deposition testimony Bakewell reported there was surveillance video footage of the fall (approximately 10 seconds long), which he reviewed within two hours of the incident. Bakewell did not ask anyone to retain the video footage, explaining, "That is not something my position would." The footage was not preserved.[2]

_____

[2]   Bakewell testified the video footage captured Brown's full body, from her head to her feet, as she approached the front entrance to the conference center. Brown appeared to be "shuffl[ing]" toward the entrance: "It didn't look like she was picking up her feet. A little bit of a side to side motion when she walked." As far as Bakewell could tell, "she tripped on her own feet. . . . There were no debris, no mats, no water. The area was clean and clear. And many other guests had been using the same area that day." Asked by Brown's counsel to do so, Bakewell estimated Brown was about five feet two inches tall and weighed more than 200 pounds.

In her response to Starwood's separate statement Brown "disputed" Starwood's use of this testimony because the video footage had not been preserved and stated she would seek to exclude the testimony on that basis. However, the record on appeal does not include any written objections by Brown to Starwood's evidentiary presentation, and it does not appear any

According to the deposition testimony of Roger Martinez, director of engineering at the time of the incident, the surveillance cameras were controlled by Fairplex, which owned the convention center, not Starwood (or Sheraton). Martinez did not request the video be preserved because "I didn't know that we can get sued." There was no protocol in place to preserve video footage of all incidents in which a guest was injured. When Martinez learned of Brown's lawsuit, he contacted Fairplex and was informed surveillance video was preserved for only 30 days.

5. *Brown's Opposition to the Motion*

In her opposition to the motion Brown argued her testimony that she believed her foot caught on a mat as she was leaving the conference center was sufficient to defeat summary judgment, contending, "While defendant offers a declaration and deposition testimony that a trip hazard was not seen, it does not rule out that plaintiff caught her foot on some dangerous condition on the hardwood floor."

In addition, Brown argued Starwood's failure to preserve the surveillance video footage of her fall constituted spoliation of evidence that, even if not intentional, warranted the imposition of issue and evidentiary sanctions, "including the striking of Mr. Bakewell's testimony and a finding that a dangerous condition caused plaintiff to fall at the hotel conference center." Brown's opposition papers included excerpts from her deposition and from the depositions of Bakewell and Martinez.

In its reply memorandum in support of the motion, Starwood argued there is no requirement under California law

were filed, as required by California Rules of Court, rules 3.1352(1) and 3.1354.

that evidence be preserved prior to the filing of a lawsuit, particularly where, as here, the evidence is in control of another entity (Fairplex).

6. *The Trial Court's Order Granting Summary Judgment*

The trial court granted Starwood's motion for summary judgment. The court ruled Starwood had carried its initial burden with a prima facie showing there was no floor mat or any other impediment that caused Brown's fall and Brown had failed to present evidence sufficient to raise a genuine issue on that point. The court explained Brown had admitted in her deposition that she did not see a floor mat and had no present recollection one was there and provided no other evidence regarding the presence of any impediment that caused the fall. Her speculation as to the reason for her fall, the court continued, is not sufficient to raise an inference that a dangerous condition was present.

The trial court rejected Brown's arguments that Starwood's failure to preserve the surveillance video gave rise to an inference a dangerous condition existed or, as spoliation of evidence, justified an order establishing liability as an issue sanction, ruling Brown had failed to show Starwood had a duty to preserve the video footage at the time it was destroyed.[3] Brown did not

---

[3] Noting the surveillance cameras and video footage were controlled by "Fairplex," which in the regular course of business retained such footage only for 30 days, the court explained no evidence had been presented regarding the relationship between Fairplex and Starwood, specifically whether Fairplex was a separate entity or shorthand for the Sheraton Fairplex Hotel & Conference Center, which was owned and controlled by Starwood. The court assumed for purpose of ruling on the motion that Starwood controlled Fairplex.

send an evidence preservation demand letter or otherwise provide notice she intended to assert a claim against the hotel prior to the time the video was overwritten or otherwise destroyed, the court wrote; and she provided no evidence of willful suppression of evidence within the meaning of Evidence Code section 413. "Plaintiff has provided no authority for the proposition that Defendant had a duty to collect, retain and preserve all evidence related to the incident and to suspend all normal record recycling procedures before Plaintiff put Defendant on notice that she intended to assert a claim and in the absence of any request to preserve evidence." Finally, because "[t]here has been no showing of an abuse of the discovery process," the court ruled Brown was not entitled to evidentiary or issue sanctions.

## DISCUSSION

### 1. *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo (*Samara v. Matar* (2018) 5 Cal.5th 322, 338) and, viewing the evidence in the light most favorable to the nonmoving party (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618), decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.)

8

To the extent Brown's opposition to the summary judgment motion can be deemed to include a request for evidentiary sanctions, we review the trial court's ruling under the deferential abuse of discretion standard. (*Van v. LanguageLine Solutions* (2017) 8 Cal.App.5th 73, 80 ["[o]rders imposing discovery sanctions are reviewed under the abuse of discretion standard and are subject to reversal only for arbitrary, capricious, or whimsical action"]; accord, *Department of Forestry & Fire Protection v. Howell* (2017) 18 Cal.App.5th 154, 191; see *Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1224 [trial court's sanction order followed alleged spoliation of evidence reviewed for abuse of discretion]; *R.S. Creative, Inc. v. Creative Cotton, Ltd.* (1999) 75 Cal.App.4th 486, 496-497 [same].)

> 2. *The Trial Court Properly Granted Starwood's Motion for Summary Judgment*

"The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury. [Citations.] Premises liability "'is grounded in the possession of the premises and the attendant right to control and manage the premises'"; accordingly, "'mere possession with its attendant right to control conditions on the premises is a sufficient basis for the imposition of an affirmative duty to act.'" [Citation.] But the duty arising from possession and control of property is adherence to the same standard of care that applies in negligence cases." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158; see *Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1156 ["'[t]he proper test to be applied to the liability of the possessor of land . . . is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others'"].)

Brown's lawsuit, asserting causes of action for premises liability and negligence against Starwood, required her to prove an unsafe or dangerous condition existed at the convention center where she slipped and fell and Starwood knew, or should have known, of the existence of that condition.  (See *Taylor v. Trimble* (2017) 13 Cal.App.5th 934, 943-944 ["An owner of real property is 'not the insurer of [a] visitor's personal safety . . . .'  [Citation.] However, an owner is responsible "'for an injury occasioned to another by [the owner's] want of ordinary care or skill in the management of his or her property. . . ."'  [Citation.]  Accordingly, landowners are required 'to maintain land in their possession and control in a reasonably safe condition,' [citation] and to use due care to eliminate dangerous conditions on their property"]; *Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 432 ["The fact that an accident occurred does not give rise to a presumption that it was caused by negligence.  [Citation.]  Instead, the injured plaintiff must establish sufficient facts or circumstances that support an inference of a breach of duty, to defeat a summary judgment motion by a defendant that is asserting due care was exercised"]; see also CACI No. 1001:  Basic Duty of Care ["A person who [owns or controls] property is negligent if that person fails to use reasonable care to keep the property in a reasonably safe condition.  A person who [owns or controls] property must use reasonable care to discover any unsafe conditions and to repair, replace, or give adequate warning of anything that could be reasonably expected to harm others"].)

Brown contends the trial court erred in concluding she failed to demonstrate a triable issue of material fact regarding a dangerous condition because, with the imposition of appropriate

10

issue and evidentiary sanctions, Starwood could not have contested liability and, in any event, her discovery responses created a sufficient conflict regarding the presence of an unsafe condition to defeat summary judgment. Neither argument has merit.

a. *Starwood's failure to preserve the surveillance video did not create a triable issue of material fact*

In *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1 (*Cedars-Sinai*) the Supreme Court held there does not exist a separate tort cause of action for intentional spoliation of evidence—the intentional destruction or suppression of evidence—when the alleged intentional spoliation is committed by a party to the underlying cause of action to which the evidence is relevant and when the spoliation is, or reasonably should have been, discovered before the conclusion of the underlying litigation. (*Id.* at p. 4.) Acknowledging that "[t]he intentional destruction of evidence is a grave affront to the cause of justice and deserves our unqualified condemnation," the Court held it was "preferable to rely on existing nontort remedies rather than creating a tort remedy." (*Ibid.*) In particular, the Court explained that Evidence Code section 413 and standard civil jury instructions authorized the finder of fact to consider willful suppression of evidence when evaluating the inferences to be drawn from the evidence presented (*Cedars-Sinai*, at p. 12) and "potent" sanctions, including issue sanctions, evidence sanctions and terminating sanctions, are available under the discovery statutes for misuse of the discovery process. (*Ibid.*) The Court observed, "Destroying evidence in response to a discovery request after litigation has commenced would surely be a misuse of discovery within the meaning of [Code of Civil Procedure former]

section 2023, as would such destruction in anticipation of a discovery request."  (*Ibid.*)

Glossing over the willful nature of the spoliation discussed by the Supreme Court in *Cedars-Sinai*, *supra*, 18 Cal.4th 1—that is, intentional destruction with the intent to suppress evidence notwithstanding a discovery demand—Brown suggests any failure to preserve material that might later be relevant in a lawsuit constitutes spoliation and warrants imposition of evidentiary and issue sanctions.  She cites no California law for this novel proposition, and the two federal cases cited do not support her argument.

In *Zubulake v. UBS Warburg LLC* (S.D.N.Y. 2003) 220 F.R.D. 212, an employment discrimination case, the federal district court ruled the "trigger date" for the preservation of evidence was when litigation was reasonably anticipated. "Merely because one or two employees contemplate the possibility that a fellow employee might sue does not generally impose a firm-wide duty to preserve.  But in this case, it appears that almost everyone associated with Zubulake recognized the possibility that she might sue. . . .  [¶]  Thus, the relevant people at UBS anticipated litigation in April 2001.  The duty to preserve attached at the time that litigation was reasonably anticipated." (*Id.* at p. 217.)  Similarly, in *Silvestri v. General Motors Corp.* (4th Cir. 2001) 271 F.3d 583, 591 the Court of Appeals held, "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."

Here, the evidence was that none of the Starwood employees who responded to the accident scene saw any

indication of a dangerous or unsafe condition that may have contributed to Brown's slip and fall. Thus, neither they nor their employer had any reason to anticipate a lawsuit by Brown in June or July 2015. Moreover, there was no evidence Starwood's failure to request that Fairplex retain video footage of the accident violated any formal corporate policy or informal practice at the conference center.[4] Accordingly, the trial court's ruling that Starwood had no duty to preserve evidence prior to notice that Brown intended to file a lawsuit, which occurred nearly two years after the surveillance video was overwritten, was well within its discretion. There was no intentional, prelitigation spoliation or misuse of the discovery process that would justify imposition of sanctions pursuant to Code of Civil Procedure section 2023.030. (Cf. *Williams v. Russ*, *supra*, 167 Cal.App.4th at p. 1227 [ample evidence supported finding that client intentionally destroyed his file while legal malpractice case was pending; because client did not establish lawyer could reconstruct the missing file, terminating sanction for the misconduct was not an abuse of discretion].)

> b. *Brown's interrogatory response and deposition testimony did not create a triable issue of material fact*

In verified responses to special interrogatories Brown stated she tripped on a defective or unsecured mat in front of the entrance to the conference center. Similarly, at her deposition Brown testified she believed her foot caught on a mat that was

---

[4] Given the litigious nature of our society, it certainly would have been prudent for Starwood to retain video evidence of all accidents regardless of apparent fault. However, lack of foresight is not a ground for sanctions.

13

placed three to five feet in front of the entryway.  That evidence, Brown contends, was sufficient to create a triable issue of material fact concerning the existence of a dangerous condition that caused her fall.

"There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850; accord, *Arvizu v. City of Pasadena* (2018) 21 Cal.App.5th 760, 763 ["[a] triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment"].)  Brown's meager evidence concerning the existence of a mat or other foreign object that caused her foot to catch falls far short of satisfying this standard.

Although Brown's special interrogatory responses stated she tripped on a mat, at her deposition Brown testified only that she believed a mat was on the floor several feet in front of the entryway.  When questioned further, Brown acknowledged she did not recall actually seeing a mat, either before or after the fall, and had no awareness she was walking on a mat when she felt her foot catch on something.  Brown did not submit a declaration in opposition to the summary judgment motion to reinforce her interrogatory response, explain the basis for her belief, as expressed at her deposition, that a mat was responsible for her fall or provide any other support for her contention a dangerous condition existed at the convention center entrance.  (Cf. Code Civ. Proc., § 2030.410 [precluding responding party's use of her own interrogatory answers].)

Citing to pages in the clerk's transcript containing six photographs that were part of Starwood's evidence in support of its motion (exhibits identified at Brown's deposition), Brown asserts in her opening brief that she presented in opposition to Starwood's motion "photographic evidence that a floor mat had been present at the accident scene," stating these "post-accident photographs of the area of the fall reveal the outline, residue, dust and debris that the border of a floor mat leaves when it is picked up from the floor." However, there is no reference to these photographs in Brown's opposition to the summary judgment motion, and her briefs in this court do not cite any portion of the record that confirms her claim she presented the evidence to the trial court. In addition, Brown in her appellate briefing does not explain what in the photographs suggests a mat had been present and removed. (See generally *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115 ["'reviewing court is not required to make an independent unassisted study of the record in search of error or grounds to support the judgment'"]; *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546 [not role of reviewing court to act as "backup counsel" for appellant].)

For his part, Bakewell testified he was on the scene within two minutes of the fall and specifically looked for anything (objects, debris or water) that might have contributed to the accident. He found nothing. Similarly, Dimailig arrived within minutes (while Brown was being treated by emergency paramedics) and also saw nothing on the floor at or near where Brown fell.

Even when viewed most favorably to Brown and without considering Bakewell's description of Brown's fall as recorded on

the surveillance video,[5] the evidence before the trial court was insufficient to establish a prima facie case a dangerous or unsafe condition existed where she fell.  (See *Howard v. Omni Hotels Management Corp.*, *supra*, 203 Cal.App,4th at p. 432 [to defeat a summary judgment motion by a defendant asserting it exercised due care, "[i]t is not enough for the plaintiff to provide speculation or conjecture that a dangerous condition of property might have been present at the time of the accident"]; *Benavidez v. San Jose Police Dept.* (1999) 71 Cal.App.4th 853, 860 ["'[i]n determining whether any triable issue of material fact exists, the trial court may, in its discretion, give great weight to admissions made in deposition and disregard contradictory and self-serving affidavits of the party'"]; cf. *Shin v. Ahn* (2007) 42 Cal.4th 482, 500, fn. 12 ["a party cannot create an issue of fact by a declaration which contradicts his prior discovery responses"]; see generally *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21 [where "'there is a clear and unequivocal admission by the plaintiff, himself [or herself], in his [or her] deposition . . . we are forced to conclude there is no substantial evidence of the existence of a triable issue of fact,'" italics omitted].)

"[A]ll appellant can argue is that she slipped and fell.  She lost her balance for some unknown reason.  She did not see

---

[5]     As noted, although Brown "disputed" Bakewell's description of her fall because the surveillance video had not been preserved, she did not object to the evidence, which would appear to be admissible as oral testimony of the content of a writing under Evidence Code section 1523, subdivision (b), provided the footage had been lost or destroyed "without fraudulent intent on the part of the proponent of the evidence."

anything on the floor which caused her to slip and fall and did not know what caused her to slip. In such a situation, '[n]egligence is never presumed.'" (*Buehler v. Alpha Beta Co.* (1990) 224 Cal.App.3d 729, 734.) Summary judgment was properly granted.

## DISPOSITION

The judgment is affirmed. Starwood is to recover its costs on appeal.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.